JOSEPH F. MENY, PLAINTIFF-RESPONDENT, v. CARL S. CARLSON, GRACE L. CARLSON, MAXWELL GOLBURGH AND BESSIE GOLBURGH, PARTNERS TRADING AS CARLSON COMPANY, AND BUSMAN AND ROSEN, INC., A CORPORATION OF NEW JERSEY, DEFENDANTS-APPELLANTS.

Argued October 23, 1950—Decided December 18, 1950.

*Mr. Charles A. Rooney* argued the cause for the appellants, Carl S. Carlson, Grace L. Carlson, Maxwell Golburgh and Bessie Golburgh, partners trading as Carlson Company.

*Mr. Harry E. Walburg* argued the cause for the appellant Busman and Rosen, Inc. (*Messrs. Cox & Walburg,* attorneys).

*Mr. George F. Losche* argued the cause for the respondent (*Mr. John J. Sullivan, Jr.,* attorney).

The opinion of the court was delivered by

BURLING, J.   Judgment pursuant to a jury verdict was entered in the Superior Court, Law Division, Bergen County, on March 30, 1950, in favor of the plaintiff and against the defendants.   Appeals were taken by the defendants to the Superior Court, Appellate Division; they have been certified by this court on its own motion.

The plaintiff, Joseph F. Meny, who was employed as a roofer by his brother, August H. Meny, doing business as General Roofing Co., was engaged in his usual occupation as a roofer in the erection of a dwelling unit known as Park Hill Apartments, in the Borough of Fairlawn, Bergen County, New Jersey, on November 26, 1947, when a scaffold upon which he was working collapsed, as a result of which the plaintiff fell some distance to the ground and sustained injuries. The defendant, Carlson Company, a partnership composed of the several named individuals, was the general contractor engaged in the erection of a housing project which consisted of eight dwelling units and had a contract with the plaintiff's employer whereby the latter was to do the roofing work on the project.   The defendant, Busman and Rosen, Inc., a cor-

poration of the State of New Jersey, had a contract with the defendant, Carlson Company, to perform the carpenter work on the project.

As a result of the plaintiff's fall and consequent injury, a complaint was filed by him in three counts against the two defendants. The first of said counts was directed against the defendant, Carlson Company; the second count was directed against the defendant, Busman and Rosen, Inc.; and the third count was directed against the two defendants jointly, severally or in the alternative. The gravamen of the complaint against Carlson Company is that the latter furnished the scaffold for use by the plaintiff; that it invited the plaintiff to use the scaffold; and that it was negligent in furnishing and maintaining a defective scaffold. The gravamen of the complaint against Busman and Rosen, Inc., is that the latter erected the scaffold for use by the plaintiff; that the scaffold was negligently erected and maintained; and that the plaintiff was invited to use the scaffold by Busman and Rosen, Inc. The defendants' answers denied the allegations of the plaintiff and pleaded various separate defenses. The pretrial order limited the issues to the following:

"(a) The negligence of the respective defendants; the contributory negligence of the plaintiff.

"(b) The assumption of risk of a known danger by the plaintiff.

"(c) The status of the plaintiff as an occupant of the premises and also as to his use of the scaffold."

Motions were made by the defendants for judgments in their favor at the completion of the plaintiff's case and again at the close of the entire case. The motions were denied. The jury returned a verdict in favor of the plaintiff and against both defendants and judgment was accordingly entered. The matter is before us on appeals from that judgment.

The defendants contend that various errors were committed by the trial court, and that there was no evidence establishing any negligence on the part of the respective defendants. The points argued by the respective defendants will be considered separately.

## BUSMAN AND ROSEN, INC.

This defendant first contends that judgment should have been entered on its behalf because the evidence established that the plaintiff was a licensee on the scaffold and the only duty owed by this defendant was to refrain from willful or wanton injury. This conclusion would be proper if the premise were correct. To establish the propriety of the premise resort must be had to the evidence. It is conceded that the scaffold was erected by this defendant and that this defendant knew the plaintiff would use the scaffold. The contract between this defendant and the Carlson Company provided, *inter alia,* that the scaffolding erected by this defendant was not to be removed without the consent of the Carlson. Company. An inference is thus created that this defendant contemplated the use of the scaffold by the plaintiff. There was testimony that in construction work, of the nature here involved, cooperation among the various trades is customary. In support of such a prevailing custom, the evidence discloses that certain cleat boards were nailed to wooden beams on the roof by the carpenters, employees of this defendant, and were left there by the carpenters, upon completion of their work, for use by the roofers, of which the plaintiff was one, in the performance of their work. It is observed that the scaffolding was erected on the side of the building and provided a means for the plaintiff to reach the roof and make use of the cleat boards which were left there by the carpenters for the plaintiff's use and benefit. These facts are suggestive of an implied invitation by this defendant for the plaintiff to use the scaffolding as a necessary incident to the performace of his work. This is particularly true since it would be unrealistic in a project of this nature, where the work of the mechanics is overlapping, for each subcontractor to erect scaffolding solely for his own use so that several sets of scaffolding would be required to be erected for work on the same building. Moreover, there was evidence from which the jury could determine that an express invitation had been extended by this defendant, through its foreman, James Hazekamp, to the plaintiff to use

the scaffold. An express invitation was testified to on behalf of the plaintiff. It is urged by this defendant that its foreman, Hazekamp, had no authority to permit employees of other contractors to use the scaffold and that he, in fact, did not authorize the plaintiff to use the scaffold. Whether or not Hazekamp did authorize the plaintiff to use the scaffold and whether Hazekamp had authority, either real or apparent, to bind his principal in this respect were questions properly submitted to the jury under the existing circumstances. There was testimony that Hazekamp knew that the plaintiff and the other roofers, as well as the tinsmiths, were using the scaffold; that Hazekamp was in charge of the carpenters; that his job was to see that the buildings were put up in a workmanlike manner and to govern the men under this defendant's contract; and that another part of the scaffold on the same building was still being used by the carpenters at the time the plaintiff was working on the part of the scaffold which collapsed. There was sufficient evidence to justify an inference that Hazekamp had control of the facilities used by the carpenters under his jurisdiction and apparent authority to authorize the use of such facilities by the plaintiff. In *Erie R. R. Co. v. S. J. Groves & Sons Co.,* 114 *N. J. L.* 216 (*E. & A.* 1934), the court said, at *page 219*:

"* * * The question in every case depending upon the apparent authority of the agent is whether the principal has by his voluntary act placed the agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform the particular act in question; and when, as here, the party, relying upon such apparent authority, presents evidence which would justify a finding in his favor, he is entitled to have the question submitted to the jury."

A review of the evidence convinces us that whether or not the plaintiff was an invitee of the defendant, Busman and Rosen, Inc.; and if an invitee, whether this status arose through an implied or an express invitation; whether this defendant placed Hazekamp in a position of apparent authority to extend an express invitation to use the scaffold; whether an express

invitation was actually extended pursuant thereto; and whether the plaintiff was justified in relying thereon, were all questions properly submitted to the jury.

This defendant next contends that there was no evidence of negligence on its part and that the trial court erred in charging the jury that the doctrine of *res ipsa loquitur* was applicable to this defendant. It is, of course, basic that negligence is a fact which must be proved and which will never be presumed; nor will the mere proof of the occurrence of an accident raise a presumption of negligence. This proposition has long been established and was recently reiterated by this court in *Callahan v. National Lead Co.*, 4 *N. J.* 150 (1950). However, where circumstances attending the occurrence of an accident are appropriate for the application of the doctrine of *res ipsa loquitur* the doctrine may be invoked for the purpose of raising an inference of negligence for consideration by the jury. The rationale of the rule has been stated by Mr. Justice Heher, in *Cicero v. Nelson Transportation Co., Inc.*, 129 *N. J. L.* 493 (*Sup. Ct.* 1943), at *page* 496, to be as follows:

"The rationale of the rule is that there is in the circumstances reasonable evidence of the defendant's negligence. The question is whether in the absence of an explanation by the defendant, the occurrence is such as reasonably warrants the inference of the want of the requisite degree of care on his part. Do the circumstances attending the occurrence of the event, tested in the light of common knowledge and experience, furnish reasonable grounds for the conclusion that if due care had been exercised by the person having control of the instrumentality causing the injury, the mishap would not have occurred? If such an inference is sustainable on the ground of probability, a *prima facie* case is established. This is so here, if there was evidence that defendant had the management and control of the instrumentality which caused the injury."

The doctrine has been considered by this court in several recent cases. *Den Braven v. Meyer Brothers*, 1 *N. J.* 470 (1949); *Hamrah v. Clements*, 3 *N. J.* 285 (1949); *Menth v. Breeze Corporation, Inc.*, 4 *N. J.* 428 (1950); *Kramer v. R. M. Hollingshead Corp.*, 5 *N. J.* 386 (1950).

In the present case there is no dispute that the plaintiff while working on the scaffold fell and sustained injuries when the scaffold gave way; there is no dispute that the scaffold was erected by this defendant, Busman and Rosen, Inc., nor is there any dispute that immediately after the accident a bracket used to support one end of the scaffold upon which the plaintiff had been working was found to be disengaged. If the plaintiff was using the scaffold as an invitee of this defendant, and we have decided that the status of the plaintiff was properly for the determination of the jury, this defendant was under a duty to exercise due care for the safety of the plaintiff if, at the time of the occurrence of the accident, this defendant had the management of the scaffold under its control. Assuming control of the scaffold by this defendant at the time of the injury, it is manifest that the disengaged bracket was a circumstance which required some explanation by this defendant as it indicated a want of due care in the erection or maintenance of the scaffold. Testimony was introduced by this defendant to the effect that the bracket was struck by planking which was being thrown from the roof by the roofers and that some of the planking being so cast from the roof had struck the scaffold. The jury could have determined that the bracket had become disengaged as a result of this latter activity. On the other hand it was within the province of the jury to conclude that the scaffold had been improperly erected or maintained by this defendant. The circumstances surrounding the fall and the disengaged bracket afforded evidence from which a permissive inference of negligence might be drawn; it was for the jury to consider such evidence as well as evidence presented by the defendant· by way of explanation to determine whether the plaintiff carried the burden of proving that negligence on the part of the defendant was the proximate cause of his injury. *Cleary v. Camden,* 118 *N. J. L.* 215 (*Sup. Ct.* 1937); affirmed, 119 *N. J. L.* 387 (*E. & A.* 1938).

It is urged by this defendant, however, that it did not have control of the scaffold at the time of the injury since

the scaffold was then being used by the plaintiff and his co-workers, and was not being used by this defendant or his carpenters. But mere use of the scaffold by the plaintiff would not as a matter of law divest this defendant of its control of the scaffold. Ownership of the scaffold, erection of the scaffold, and the properly inferable invitation by this defendant to the plaintiff to use the scaffold created an inference from which the jury could justifiably determine that the scaffold was under the control of this defendant. The fact that the jury determined that both this defendant and the Carlson Company were in control of the scaffold creates no inconsistency. Control might have been in either or both of the defendants; in either case the doctrine of *res ipsa loquitur* was applicable. The word "exclusive" when used to define the nature of the control necessary to invoke the doctrine of *res ipsa loquitur* does not connote that such control must be several and the defendant singular and never plural. *Schroeder v. City & County Savings Bank of Albany, et al.,* 293 *N. Y.* 370, 57 *N. E.* 2d 57 (*N. Y. Ct. of App.* 1944); rehearing denied, 293 *N. Y.* 764, 57 *N. E.* 2d 842. See also 65 *C. J. S., Negligence,* § 220 (8) *bb, p.* 1018. This philosophy was followed in *Biondini v. Amship Corporation,* 185 *P.* 2d 94 (*Dist. Ct. of App. Cal.* 1947). In that case, in which the situation was very similar to that of the case *sub judice,* the court decided that the doctrine of *res ipsa loquitur* applied to a factual situation involving injury resulting from the collapse of a scaffold. In referring to the application of the doctrine, the court said, at *page* 104:

"Harbor Ship argues that the doctrine is not applicable to it because the scaffold was not within its 'exclusive' management and control. The law does not prohibit the application of the doctrine against two or more defendants where there is joint control. *Price v. McDonald,* 7 *Cal. App.* 2d 77, 45 *P.* 2d 425; *Ybarra v. Spangard,* 25 *Cal.* 2d 486, 154 *P.* 2d 687, 162 *A. L. R.* 1258. It was for the jury to say whether either or both of these defendants had 'control' of the scaffold, and if it should find that either or both had such control it should be instructed that the doctrine under discussion is applicable to that defendant or defendants."

Indeed, the courts of this State have decided that an instrumentality causing injury may be in joint control of two defendants in which event the doctrine of *res ipsa loquitur* will apply against both of said defendants. *Smith v. Claude Neon Lights, Inc.,* 110 *N. J. L.* 326, 331 (*E. & A.* 1932). This principle appears to have been recognized in an opinion by Chief Justice Beasley in *Van Winkle v. American Steam Boiler Co.,* 52 *N. J. L.* 240, 246 (*Sup. Ct.* 1890). We conclude that in the instant case the question of whether the scaffold was under the control and management of either or both of the defendants at the time of the plaintiff's injury was factual and was properly submitted to the jury.

The next contention of Busman and Rosen, Inc., is that the trial court erred in refusing to charge the jury that there was no evidence of willful or wanton injury established in the present case. We see no merit to this point. The trial court, having charged the jury with respect to the duty to exercise reasonable care for the safety of an invitee, charged the jury as follows:

"If, on the other hand, you find that the plaintiff is a licensee, then the legal duty would be a different one; for it is the contention of the defendant Busman and Rosen, Inc., that the defendant was not under any duty to provide a reasonably safe place for the plaintiff, and that is upon the theory that the plaintiff was not an invitee, but was a licensee. And under the law of this State, a person who is a licensee can only recover damages for personal injuries sustained through wanton or willful injury on the part of the defendant. And, of course, that relationship is entirely different from the relationship which I have characterized as that of an invitee."

The charge adequately stated the law with respect to the limitation of the right of recovery of a licensee. Since, as stated in this defendant's brief, "There was no claim in this case that there was any willful or wanton injury, nor was there any evidence of such injury," and since the court had previously stated on at least three occasions in its charge that the complaint was based on negligence, we fail to see how this defendant was harmed by the court's refusal to charge as requested.

It is next contended that the following part of the court's charge constituted harmful error:

"*  *  * And the definition of negligence as I have defined it would be that it is the neglect to perform or the improper or insufficient performance of a legal duty, and the legal duty in that particular case, if he was an invitee, was to use reasonable care in his conduct in furnishing premises and in furnishing the scaffold for the installation of the work of the roofer in this particular case."

It is urged that the effect of the foregoing was to instruct the jury that Busman and Rosen, Inc., was under a duty to use reasonable care in furnishing the premises as well as in furnishing the scaffold for the work of the roofers.

This argument is ineffective. The injury was sustained by a fall from a scaffold attached to a building which formed a unit of the scope of the work of the general contractor on which Busman and Rosen, Inc., were engaged in performing carpenter work and the plaintiff was engaged in performing roofing work. The jury could not have been misled because the gravamen of the complaint, alleging a violation of duty, related specifically and not otherwise to the scaffold on the building, and the court's charge clearly stated that "This case involves the use of a scaffold."

The last point urged by Busman and Rosen, Inc., is that there was no evidence presented of any negligence on the part of this defendant. Our previous discussion of the evidence and our decision that the doctrine of *res ipsa loquitur* is applicable to the case disposes of the point unfavorably to this defendant.

It follows that the judgment against the defendant, Busman and Rosen, Inc., is affirmed.

## THE CARLSON COMPANY.

The plaintiff, as an employee of a subcontractor, was on the premises by the implied invitation of the defendant, Carlson Company, the general contractor, which was bound to use reasonable care to see that the place in which the work was to be performed was reasonably safe. *Terranella v. Union*

*Bldg. and Construction Co., 3 N. J.* 443 (1950) ; *Murphy v. Core Joint Concrete Pipe Co., 110 N. J. L.* 83 (*E. & A.* 1933).

This defendant contends, however, that there was no proof of a violation of any duty owing by this defendant to the plaintiff, that there was no proof of negligence on the part of this defendant as to the proximate cause of the plaintiff's injuries, that the plaintiff assumed the risk, that the doctrine of *res ipsa loquitur* was not applicable, and therefore the trial court erred in refusing to grant this defendant's motions for judgment. We disagree with this contention. We have already determined that the doctrine of *res ipsa loquitur* applied to the situation. Our discussion and disposition of this question with reference to the appeal of the defendant, Busman and Rosen, Inc., is equally applicable to this defendant.

Several cases are cited by this defendant in support of its contention that *res ipsa loquitur* is not applicable to the present situation, but we find the cases to be inapposite. The two cases most strongly relied upon by this defendant are *Holmes v. Pelligrino, 102 N. J. L.* 697 (*E. & A.* 1926), and *Moran v. Moore McCormack Lines, 131 N. J. L.* 332 (*Sup. Ct.* 1944) ; affirmed, 132 *N. J. L.* 171 (*E. & A.* 1944). In the *Holmes case* the defendant had furnished some planks for one Schlossman to use in the erection of a scaffold. The latter erected the scaffold. While working on it, a plank broke and the plaintiff fell to the floor. It was held that the doctrine of *res ipsa loquitur* was inapplicable to the defendant. But in that case there was no evidence that the defendant had any control of the scaffold during or subsequent to its erection, whereas in the present case there was evidence from which the jury could infer that the defendants had joint control of the scaffold. Furthermore, there was no evidence in the *Holmes case* of what caused the plank to break, whereas in the instant case there was evidence that the scaffold fell because of a disengaged bracket.

In the *Moran case, supra,* the trial court disposed of the merits of the case adversely to the plaintiff. The opinion of

the Supreme Court in that case discloses that a rather unusual course was pursued. A nonsuit was granted at the conclusion of the *entire* case on the basis of the defendant's explanatory testimony which was not contradicted or rebutted and which was deemed conclusive that the defendant was not guilty of negligence.

This defendant argues, however, that since it engaged Busman and Rosen, Inc., as an independent contractor, to erect the scaffold its only duty to the plaintiff was to exercise reasonable care in selecting a skillful and proper person as such contractor, and having performed that duty it was relieved of any negligence which may be imputable to the independent contractor. In pursuance of this argument the Carlson Company urges that the trial court erred in not charging its request No. 15 as follows:

"The general rule of law is that where one employs a contractor exercising an independent employment and hiring his own servants to do work not in itself a nuisance, the contractor alone is liable for an injury resulting from the negligence of himself or his servants unless the employer is in default in selecting an unskillful or an improper person as contractor."

The principle of law stated in the request is correct. *Terranella v. Union Bldg. & Construction Co., supra; Bacak v. Hogya,* 4 *N. J.* 417 (1950) ; but it was not error to refuse to charge this principle under the circumstances here existing. The principle of law, as stated in the request, is a "general rule." These words perforce indicate that there are exceptions. The present case comes within the exceptions. The extent to which a person may relieve himself of liability by engaging an independent contractor has limitations. The evolution of the law on this subject appears to be as follows: One of the earliest cases on the subject is *Bush v. Steinman,* 1 *Bos. & P.* 404, 126 *Eng. Reprint* 978 (*Eng.* 1799), which is reviewed in *Anno.* 18 *A. L. R.* 821. The philosophy of that case was that the person engaging an independent contractor was liable for the negligence of a servant of the independent contractor on the theory of *respondeat superior.* This philoso-

phy was followed for a time by some early American cases, but was rejected in New Jersey in the case of *Cuff, Adm'x. v. Newark and New York R. R. Co., et al.,* 35 *N. J. L.* 17 (*Sup. Ct.* 1870); affirmed, 35 *N. J. L.* 574 (*E. & A.* 1870), and elsewhere; 27 *Am. Jur., Independent Contractors,* § 27, *p.* 504. The philosophy following the rejection of *Bush v. Steinman, supra,* permits a person to relieve himself of liability under certain circumstances by engaging an independent contractor to perform the work. In such cases although he thereby escapes liability for negligence of such contractor he is not immune to liability for his own negligence, and if the negligence of both concur, both are liable. 27 *Am. Jur., Independent Contractor,* § 30, *p.* 508.

The present case involves the use of a scaffold. The scaffold was an appliance furnished for the use of the workmen. It has been established in this State that under the common law a master owes a duty towards his own servants to exercise reasonable care for the safety of appliances furnished by him for their use. This doctrine is extended to cases where a person agrees to furnish a contractor, in this case to the plaintiff's employer, with an instrumentality or appliance for use in the performance of a task.

In the *Restatement of the Law, Torts, Vol. 2,* § 392, *p.* 1064, the rule is stated as follows:

"One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied:

"(a) If the supplier has failed to exercise reasonable care to make the chattel safe for the use for which it is supplied, * * *."

On page 1068 of the *Restatement, supra,* under comment e, the following statement is made:

"Supplying tools for workmen. One who employs another to erect a structure or to do other work and agrees for that purpose to supply the necessary tools and temporary structure, supplies them to the employees of such other for a business purpose."

Under this comment, various illustrations are given, including the following:

"2. A is the principal contractor for the erection of a building. He lets out the various parts of the work to subcontractors. His contracts with them required him to provide all necessary scaffoldings. A servant of any of the subcontractors who goes upon the scaffolding is using it for the business purposes of the contractor."

The subject is extensively reviewed in an annotation in 44 *A. L. R.* 932, 1049, in which various cases, including *Mulchey v. Methodist Religious Soc.,* 125 *Mass.* 487 (1878), are considered. See also 38 *A. L. R.* 461, 29 *A. L. R.* 738, *Restatement, Torts, Vol.* 2, § 1393, *p.* 1070, *et seq.; Hall v. Bates,* 216 *Mass.* 140, 103 *N. E.* 285 (*Sup. Jud.* 1913), and *Hilleary v. Bromley,* 146 *Ohio* 212, 64 *N. E.* 2d 832 (*Sup. Ct.* 1946), for discussion and application of the principle.

An application of the principle as above illustrated makes it obvious that the defendant, Carlson Company, if it assumed the obligation of furnishing scaffolding for the plaintiff's use, owed a duty to the plaintiff to furnish a reasonably safe scaffold, and that the Carlson Company could not relieve itself of such duty by delegating the construction of the scaffold to an independent contractor. While the scaffold was erected by Busman and Rosen, Inc., it was within the province of the jury to determine that it was supplied by the Carlson Company for use by the plaintiff and others.

It is urged by the Carlson Company, however, that it did not agree to furnish scaffolding for use by the plaintiff and that the contract between this defendant and the plaintiff's employer was embodied in a letter written by the Carlson Company to the plaintiff's employer on October 8, 1947, prior to the commencement of the work by the plaintiff on the housing project. This letter stated, *inter alia,* "Please furnish necessary labor and equipment for laying all of the asphalt shingles required for the above noted apartment project." There was testimony on behalf of the plaintiff that the contract with the Carlson Company for the roofing was an oral contract, that it had been made sometime prior to the date of

the above letter and that it included the furnishing of scaffolding by the Carlson Company. There was conflicting evidence as to whether there was an oral contract or whether the letter constituted the entire contract. In this posture the Carlson Company requested the court to charge as follows:

"If you find from all the evidence that the writing of October 8, 1947, from Carlson to Meny constituted the written agreement between the parties hereto, then I charge you that such agreement in writing cannot be varied by oral conversations, and that you would not under such circumstances consider any such alleged conversations in the light of varying the written agreement between the parties."

The court so charged, and then added:

"I so charge you; but I reiterate the charge that the plaintiff contends that it was not a written contract, and that there had been preliminary agreements between the parties and that they had already talked between themselves, that is, Carlson and Mr. Meny, concerning the work and concerning, particularly, according to the plaintiff, the question of scaffolding."

The Carlson Company contends that the additional charge constituted error because the letter was a complete written contract and its terms could not be varied under the parol evidence rule. We do not agree with the point so advanced. Under the circumstances of this case it was properly a jury question as to whether an oral contract or the letter constituted the agreement between the parties. It is observed that the letter was not signed by the subcontractor, Meny, nor was there any correspondence by the latter in response thereto. The letter refers to "equipment" but does not refer to scaffolding. The word "equipment" is susceptible of different interpretations. In the light of the surrounding testimony in this case that Busman and Rosen, Inc., were to erect scaffolding; that the carpenter work on the project was to precede the work of the roofers; that scaffolding was of necessity to be used by the carpenters, the roofers and the tinsmiths; that the work of the several subcontractors was somewhat overlapping; that cooperation among the workmen is customary

on a project of this nature; and that the scaffolding erected by Busman and Rosen, Inc., was not to be removed without the consent of the Carlson Company, when considered with the fact that it would appear to be unrealistic for each of several subcontractors to erect its own scaffolding on a project such as this, sufficient evidence was presented for the jury to determine that the agreement between the parties was oral and that it included the obligation on the part of the Carlson Company to furnish necessary scaffolding for use by the plaintiff in the performance of his work.

The last point raised by the Carlson Company is that there was no evidence presented of any negligence on the part of this defendant. Our discussion of the evidence, our determination that the doctrine of *res ipsa loquitur* is applicable to this defendant, and our determination that the general rule relieving a person from liability for acts of an independent contractor is not available to the Carlson Company in this case, results in the conclusion that this point is without merit. It follows that the judgment against the Carlson Company should be affirmed.

The judgment appealed from is affirmed in all respects.

*For affirmance as to all defendants*—Chief Justice VANDERBILT, and Justices HEHER, WACHENFELD, BURLING and ACKERSON—5.

*For affirmance as to Busman & Rosen, Inc., and for reversal as to the other defendants*—Justices CASE and OLIPHANT—2.