**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4319-14T3

MARIA CORTEZ-STARICCO,

    Plaintiff-Appellant,

v.

PIER VILLAGE LWAG, and APPLIED
PROPERTY MANAGEMENT CO., INC.,

    Defendants-Respondents,

and

AJD CONSTRUCTION CO., INC.,
and TWIN INDUSTRIES a/k/a TWIN
INDUSTRIES, INC.,

    Defendants,

and

PIER VILLAGE LWAG, and
APPLIED PROPERTY MANAGEMENT CO., INC.

    Defendant/Third-Party Plaintiffs,

v.

MAIK COMPANY,

    Third-Party Defendant.

_____

MARIE CORTEZ-STARICCO,

    Plaintiff-Appellant,

v.

GREGORY MAIK a/k/a MAIK COMPANY,

    Third-Party
    Defendant/Respondent.

_____

Submitted October 11, 2016 — Decided May 22, 2017

Before Judges Ostrer, Leone, and Vernoia.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Docket Nos. L-3412-12 and L-2831-13.

Richard A. Feldman, attorney for appellant.

Smith Mazure Director Wilkins Young & Yagerman, P.C., attorney for respondents Pier Village LWAG and Applied Property Management Co., Inc. (Steven M. Pardalis, on the brief).

Law Office of Michael C. Urciuoli, attorney for respondent Gregory Maik a/k/a Maik Company (Richard B. Smith, of counsel and on the brief).

PER CURIAM

Plaintiff Marie Cortez-Staricco challenges two April 24, 2015 orders granting summary judgment, one in favor of defendants Pier Village LWAG (PV) and Applied Property Management, Co., Inc. (Applied), and the other in favor of defendant Gregory Maik a/k/a Maik Company (Maik). We reverse the orders and remand for trial.

We derive the following facts from the parties' statements of undisputed facts and from evidence submitted by the parties in connection with the summary judgment motions.[1]

In 2011, plaintiff was forty-three-years old and renting an apartment at the Pier Village apartment complex (the Village) in Long Branch. On the morning of Tuesday, July 26, 2011, plaintiff was rollerblading between 8:00 a.m. and 8:30 a.m. on a sidewalk at the Village near the pool. Plaintiff testified the sidewalk

---

[1] The parties impeded judicial review of the summary judgment motions by failing to follow Rule 4:46-2. The Rule requires the moving party to file a "statement of each material fact as to which the movant contends there is no genuine issue," requires the responding party to "file a responding statement either admitting or disputing each of the facts in the movant's statement," and permits the responding party to list additional material facts, to which the moving party may respond. R. 4:46-2(a), (b); see R. 4:46-5(a). Defendants filed inadequate statements, plaintiff filed her own statement, and no one admitted or denied the facts of anyone else's statement.

"Summary judgment requirements, however, are not optional." Lyons v. Township of Wayne, 185 N.J. 426, 435 (2005). "A party's failure to comply with the requirements of Rule 4:46-2 can result in a considerable waste of judicial time and resources when trial and appellate courts are forced to search for factual issues by sifting through voluminous and confusing records — work that should be performed by the parties." Id. at 435-36. Our Supreme Court expects "parties to comply with the dictates of Rule 4:46-2(b)," and "will not continue to condone refusal or failure to comply." Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 568 n.2 (2009). Although we have been able to garner sufficient facts from the record for our review despite the parties' failures to follow Rule 4:46-2, those failures are not condoned and should not be repeated.

A-4319-14T3

was "completely dry," and there was no mulch or debris in the area. While rollerblading, the sprinkler system activated with no warning, and sprayed plaintiff with mulch, water, and other debris, jamming mulch in the wheels of her rollerblades. Plaintiff fell and broke her right wrist. She had two surgeries to repair the damage.

Plaintiff initially sued PV. She amended her complaint to add Applied, a property management company which supplied on-site maintenance staff for PV. PV and Applied were principally owned and operated by the same company, and we consider them part of a single entity.[2]

Later, plaintiff separately sued Maik, an outside contractor hired by Applied to perform maintenance on the sprinkler system at the Village, as well as at other properties Applied managed. The two suits were consolidated.[3]

---

[2] PV and Applied jointly filed a summary judgment motion. They filed joint briefs and were represented by the same counsel in the summary judgment proceeding and on appeal. None of the parties argues PV and Applied should be treated separately.

[3] Plaintiff earlier sued Twin Industries, Inc. (Twin), and AJD Construction Co., Inc. (AJD). Twin was a landscaping/sprinkler company mistakenly believed to be responsible for the maintenance of the sprinkler system at the Village. AJD was the commercial construction company that designed and built the Village. Plaintiff has voluntarily dismissed her claims against Twin and AJD.

Maik would perform a start-up of the sprinkler system at the Village every April and a shut-down of the system every October. Additionally, Maik would come to the Village when Applied's maintenance supervisor, Leon Brach, called him to make repairs or perform maintenance on the sprinkler system.

The Village is divided into "Phase I" and "Phase II" areas. This incident occurred near the pool in the Phase II area. Phase II is serviced by an underground irrigation sprinkler system, controlled by a single digital control box in a locked pump room. Brach and members of his maintenance team had the keys to the pump room.[4]

In April 2011, Maik set the control box timer to run the sprinkler system between midnight and 4:30 a.m. every Monday, Wednesday, and Friday. Maik testified the timer was never reset throughout the season. Maik testified that in order for the sprinkler system to operate on a day outside of its normal schedule, the system would need to be manually run by someone who had access to the digital control box. Brach and other members of the maintenance staff knew how to manually override the timer so as to run the sprinkler system when necessary.

---

[4] Plaintiff notes that the security guard at the Village also had a key, but no party alleges that the security guard had any involvement with the sprinkler system.

A-4319-14T3

Brach testified that "[o]nly if we come and test the system," or if Maik was repairing the system, would the sprinkler system be "programmed to go on at any time after four o'clock in the morning." Anthony Lazardi, a member of Brach's maintenance team, testified "[s]omeone had to have turned it on, because there is no other way" for it to have come on at or after 8:00 a.m. Maik testified "if the system was run, other than Monday, Wednesday and Friday from midnight to 4:30 in the morning, . . . it would have to be activated manually."[5]

Plaintiff presented a report from Ronald L. Saxon, a licensed professional engineer who offered expert opinions concerning the possible causes of the accident. Saxon noted "the discovery presented does not indicate clearly why the sprinkler started up during the day on July 26th," but added:

> What is known is that the sprinkler could have started because the timer had not been set properly, e.g. by Mr. Maik when he serviced the system on [July] the 6th; because the timer had been re-set by [PV] for unknown reasons; because Maik had been at the site on the 26th and manually operating the system; or because [PV] had been manually operating the system for diagnostic purposes.

---

[5] Maik said the system also could run if there had been a disruption in the control valve, but added there was no disruption in the control value in 2011.

PV/Applied filed a motion for summary judgment. Maik filed a separate motion for summary judgment. At a hearing on April 24, 2015, the trial court ruled it was "constrained to grant the motions for summary judgment." First, the court found the need for expert testimony in the case would be "paramount." The court acknowledged that a jury could "derive these inferences [of negligence] from the facts." However, the court believed "ultimately the facts have to be presented to the Jury through an expert because this type of [complex] system in my view is something that only an expert can render opinions on as to the issue of negligence in this case." Second, the court concluded "plaintiff on this record will [not] be able to show that one party or the other had exclusive control over" the sprinkler system. Plaintiff appeals on both issues.

## II.

"[W]e review the trial court's grant of summary judgment de novo under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016). "The trial court's conclusions of law and application of the law to the facts warrant no deference from a reviewing court." W.J.A. v. D.A., 210 N.J. 229, 238 (2012).

Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file,

together with affidavits, if any, show that there is no genuine issue of material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."  R. 4:46-2(c). We must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).  We "must accept as true all evidence which supports the position of the party defending against the motion and must accord [that party] the benefit of all legitimate inferences which can be deduced therefrom."  Id. at 535.  We must hew to that standard of review.

### III.

Plaintiff argues summary judgment should not have been granted to defendants because the doctrine of res ipsa loquitur applied.  "When applicable, the doctrine of res ipsa loquitur enables the plaintiff to make out a prima facie case[,]" and "ordinarily assures the plaintiff [her] case . . . will survive summary judgment."  Jerista v. Murray, 185 N.J. 175, 191, 193 (2005).

"Res ipsa loquitur, Latin for 'the thing speaks for itself,'" "allows the factfinder to draw an inference of negligence against

the party who was in exclusive control of the object or means that caused the accident." Id. at 191—92. "Res ipsa loquitur is not a theory of liability; rather it is an evidentiary rule that governs the adequacy of evidence in some negligence cases." Szalontai v. Yazbo's Sports Café, 183 N.J. 386, 400 (2005) (citation omitted). In order to present a case of res ipsa loquitur, the proponent must show "(a) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality was within the defendant's exclusive control; and (c) there is no indication in the circumstances that the injury was the result of the plaintiff's own voluntary act or neglect." Khan v. Singh, 200 N.J. 82, 91 (2009) (citation omitted).

Here, it is undisputed the injury was not the result of plaintiff's voluntary act or neglect. However, the trial court found the other two prerequisites were not met.

A.

"Whether an accident bespeaks negligence 'depends on the balance of probabilities.'" Jerista, supra, 185 N.J. at 192 (quoting Buckelew v. Grossbard, 87 N.J. 512, 526 (1981)). Thus, the doctrine is available to a plaintiff "if it is more probable than not that the defendant has been negligent." Myrlak v. Port Auth. of N.Y. and N.J., 157 N.J. 84, 95 (1999). "[A] plaintiff need not exclude all other possible causes of an accident as a

condition of entitlement to the doctrine, provided he can show that it is more probable than not that the defendant's negligence was a proximate cause of the mishap."  Brown v. Racquet Club of Bricktown, 95 N.J. 280, 291-92 (1984).

The trial court found res ipsa loquitur was inapplicable because the sprinkler system was a complex piece of machinery which required expert testimony to detail the workings of the system.  However, our Supreme Court has "disagree[d] with [the] sweeping suggestion . . . that in almost all complex instrumentality cases a res ipsa inference will be conditioned on the production of the expert testimony."  Jerista, supra, 185 N.J. at 197.  "The question is not whether the instrumentality at issue is complex or simple, but whether based on common knowledge the balance of probabilities favors negligence, thus rendering fair the drawing of a res ipsa inference."  Id. at 199.

Although the inner workings and mechanisms of a sprinkler system may be outside the ken of the average juror, here it was undisputed that the Village sprinkler system should not have turned on between 8:00 a.m. and 8:30 a.m. on a Tuesday.  Our Supreme Court faced an analogous situation in Jerista.  There, it was conceded that while the plaintiff was entering a supermarket, the automatic door suddenly closed, striking and injuring her.  Id. at 182.  The Court considered whether a jury could "infer, based

on common knowledge, that automatic doors ordinarily do not malfunction unless negligently maintained by the store owner or whether the res ipsa reference is preconditioned on the expert testimony first explaining the door's mechanics." Id. at 180. The Court held "[a]n automatic door may be a highly sophisticated piece of machinery," but "an automatic door that closes onto and injures a customer entering a supermarket is an occurrence bespeaking negligence that falls within jurors' common knowledge," so "expert testimony is not mandated" and "a res ipsa inference" is justified. Id. at 197, 200.

Like the supermarket door in Jerista, the sprinkler system at the Village concededly activated when it was not supposed to. Based on the defendants' own evidence — the testimony of Maik, Brach, and Brach's staff — it is undisputed that the sprinkler system could not have run at the inappropriate time of Tuesday between 8:00 a.m. and 8:30 a.m. unless the system was manually overridden by one of the defendants.[6]

Moreover, Mark Hindenach, another member of Brach's maintenance staff, testified the sprinklers were "never" run during the day because there was "so much traffic, so many people"

[6] No party claimed at the summary judgment hearing that the sprinkler system turned on because it malfunctioned or was defectively manufactured or installed.

then and the sprinklers would "interfere with people walking and whatever."  Given that testimony, and the undisputed evidence the sprinklers should not have been running on a Tuesday between 8:00 a.m. and 8:30 a.m., a jury could find manually running the sprinkler system at that busy time of day so it sprays tenants walking, running, or rollerblading through the area "<u>probably</u> does not" happen without negligence.  <u>Id.</u> at 197.  "That conclusion can be reached based on common knowledge without resort to expert testimony.  A jury does not need an expert to tell it what it already knows."  <u>Ibid.</u>[7]

In any event, plaintiff's expert reached a similar conclusion in his report.  Excluding other possible causes, and discounting the possibility that the timer had been mis-set or reset, Saxon concluded either PV/Applied or Maik had manually overridden the system in a negligent manner contributing to plaintiff's injuries.  Although the trial court stressed Saxon could not say which defendant was responsible, that does not preclude application of res ipsa loquitur.  <u>See</u> <u>Rose v. Port of N.Y. Auth.</u>, 61 <u>N.J.</u> 129,

---

[7] PV/Applied argues an expert was required to establish a standard of care.  Even assuming standard of care testimony is generally required regarding sprinkler operation, "experts are not needed to establish professional standards of care where either the doctrine of <u>res ipsa loquitur</u> or the doctrine of common knowledge applies."  <u>Estate of Chin by Chin v. St. Barnabas Med. Ctr.</u>, 312 <u>N.J. Super.</u> 81, 92-93 (App. Div. 1998), <u>aff'd</u>, 160 <u>N.J.</u> 454, 469 (1999).

135-37 (1972) (applying res ipsa loquitur to the defendants even though the plaintiff's expert could not pinpoint the actual reason the automatic doors closed but instead "'suggest[ed] several things that might have gone wrong'"); see Jerista, supra, 185 N.J. at 193-95 (relying on Rose even though Rose's "expert engineering testimony did not answer the question of why the automatic door malfunctioned"). "To be sure, [more definitive] expert testimony in this case might have been helpful, but it was not essential to plaintiff's case." Mayer v. Once Upon A Rose, Inc., 429 N.J. Super. 365, 377 (App. Div. 2013).

Regardless, viewing the facts in the light most favorable to plaintiff, we find the "accident bespeaks negligence." Jerista, supra, 185 N.J. at 192. "The [res ipsa loquitur] doctrine does not shift the burden of persuasion to the defendant. Rather, what is required of defendant is an explanation, not exculpation. It shifts to the defendant the obligation to explain the causative circumstances because of defendant's superior knowledge." Szalontai, supra, 183 N.J. at 400 (quoting Myrlak, supra, 157 N.J. at 95-96). Here, defendants offered no other explanation as to why the sprinkler system turned on at the time of the injury other than one of the defendants turned it on. See Jerista, supra, 185 N.J. at 197 (a defendant "must come forward to rebut the inference"). Thus, "the circumstances establish 'that it is more

probable than not that the defendant's negligence was a proximate cause of the mishap.'" Id. at 192 (quoting Brown, supra, 95 N.J. at 287, 291-92).[8]

## B.

Defendants next argue res ipsa loquitur is inapplicable because plaintiff cannot specify which of the defendants had exclusive control over the sprinkler system at the time of her injury. "The doctrine of res ipsa loquitur, however, has been applied in cases involving multiple defendants." Myrlak, supra, 157 N.J. at 100. "[T]he exclusive control requirement has not been interpreted as limiting application of the doctrine only to those situations involving a single defendant." Apuzzio v. J. Fede Trucking, Inc., 355 N.J. Super. 122, 128 (App. Div. 2002) (allowing plaintiffs struck by a truck's tires to invoke res ipsa loquitur against both the company which owned the truck and the company which serviced the tires four days before). "The word 'exclusive' when used to define the nature of the control necessary to invoke the doctrine of res ipsa loquitur does not connote that such control must be several and the defendant singular and never plural." Ibid. (quoting Meny v. Carlson, 6 N.J. 82, 93 (1950)

---

[8] Plaintiff asserts her expert's report cannot be used against her because she produced the report under the proviso that it was not an adoptive admission. We find summary judgment was inappropriate even considering the expert's report.

(allowing a plaintiff injured by the collapse of a scaffold to invoke res ipsa loquitur against both the company which erected and maintained the scaffold and the company using and maintaining the scaffold)). "Control might have been in either or both of the defendants; in either case the doctrine of res ipsa loquitur was applicable." Ibid. (quoting Meny, supra, 6 N.J. at 93).

Thus, we held a plaintiff pinned by an elevator door could invoke res ipsa loquitur against both the building owner and the maintenance company which serviced the elevator earlier that day. Allendorf v. Kaiserman Enters., 266 N.J. Super. 662, 669-72 (App. Div. 1993). We ruled the maintenance company's "connection with the elevator which caused plaintiff's injury was sufficiently immediate and direct to support a finding that it had 'control' of that elevator, and thus the trial court correctly concluded that the doctrine of res ipsa loquitur was applicable." Id. at 671-72; see also Smith v. Claude Neon Lights, Inc., 110 N.J.L. 326, 330-32 (E. & A. 1933) (finding "sufficient evidence of partial possession and control . . . to warrant the application of the doctrine of res ipsa loquitur against the Light Company [which maintained a sign on a building roof], as well as against the Trust Company" which owned the building).

This case resembles Allendorf, as plaintiff has sued both the premises owner, PV/Allied, and Maik, who recently maintained the

sprinkler system. Moreover, there was sufficient evidence to allow a jury to find control of the system "might have been in either or both of the defendants." Meny, supra, 6 N.J. at 93. PV/Applied does not contest it generally had control over the system both on and before the day plaintiff was injured.[9] Maik does not dispute that when he services the system he has control over it. Finally, plaintiff proffered evidence supporting an inference that Maik serviced the system on or immediately before the day of plaintiff's injury.

Plaintiff made clear at the summary judgment hearing her claim "against Maik is that he was there on July 26 and he was involved in the activation of the system."[10] Although Maik's

---

[9] Indeed, "[a]n owner of a building has a non-delegable duty to exercise reasonable care for the safety of tenants and persons using the premises at his invitation. That the owner contracts for maintenance of [the equipment on the premises] does not relieve it of that duty[.]" Rosenberg v. Otis Elevator Co., 366 N.J. Super. 292, 303-05 (App. Div. 2004) (citation omitted) (upholding application of res ipsa loquitur against both the building owner and the company which manufactured and maintained an elevator which dropped suddenly). "Where . . . the defendant's duty of care with respect to the injuring agency is (as to the plaintiff) non-delegable, the fact that control may have been in an independent contractor will not preclude the application of the [res ipsa loquitur] doctrine." 2 Harper & James, The Law of Torts § 19.7 at 1087 (1956); see Prosser & Keeton on Torts 250 (5th ed. 1984).

[10] Plaintiff's counsel conceded it would be "pure speculation" to suggest "Maik did something two weeks earlier or three weeks earlier to have caused the sprinkler to fire two or three weeks later."

appointment book does not list any work at the Village on July 26, plaintiff argued Maik's billing system and his bookkeeping supported a reasonable inference that Maik was at the Village on July 26. Maik sent an invoice to Applied dated July 28 for repairs on the sprinkler system near the pool area of Phase II at the Village. Maik testified he typically bills two to three days after the work is performed, and never bills beforehand. Thus, a jury could reasonably infer Maik was at the Village on July 25 or 26, accessed the control panel, and manually overrode the system while repairing the continuing problems in the pool area, causing plaintiff's injury. Therefore, "[c]ontrol might have been in either or both of the defendants; in either case the doctrine of res ipsa loquitur was applicable." Meny, supra, 6 N.J. at 93.[11]

Our decision is based on our standard of review and on the unusual agreement of the witnesses for PV/Applied and Maik that the sprinkler should not have turned on at the time plaintiff was

---

[11] Thus, we need not address whether Maik's regular, twelve—year, multi-location relationship with Applied made him its servant. See Bornstein v. Metro. Bottling Co., 26 N.J. 263, 272 (1958) (finding res ipsa loquitur can apply if the instrumentality is "under the management of the defendant or his servants"); see also Maciag v. Strato Med. Corp., 274 N.J. Super. 447, 461 (App. Div. 1994) (finding res ipsa loquitur can apply if the instrumentality was under "'[t]he control at one time or another, of . . . [the] defendant or of his employees or temporary servants'") (citation omitted).

injured, and could only have been turned on manually by one of the defendants. "Accepting plaintiff['s] version of the [sprinkler] incident and the causation described by [Maik and PV/Applied's] employees, summary judgment should not have been granted to defendants on the record before the court." Rosenberg, supra, 366 N.J. Super. at 305. Whether plaintiff's claims should prevail is for the jury.[12]

"Once res ipsa loquitur is established, the case should go to the jury unless defendant's countervailing proof is so strong as to admit of no reasonable doubt as to the absence of negligence." Szalontai, supra, 183 N.J. at 398 (quoting Brown, supra, 95 N.J. at 288-89). Here, neither PV/Applied nor Maik have yet offered such strong evidence as to prevent plaintiff's case from going to a jury.[13] Therefore, we reverse the orders granting

---

[12] Maik testified that his last visit to the Village was on July 13, 2011, and that he was not at the Village on July 26. Brach and the other staff of PV/Applied testified they had not manually operated the sprinkler system on July 26, and insisted a staff member would not have done so without a second person near the sprinklers to observe their operation. While we must "accept as true all the evidence which supports the position of the party defending against the motion and must accord [that party] the benefit of all legitimate inferences which can be deduced therefrom," Brill, supra, 142 N.J. at 535, the jury will be free to consider any such contrary testimony at trial.

[13] Defendants' remaining arguments lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

summary judgment and remand for trial. We do not retain jurisdiction.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION