LEONARD A. JOHNSON, APPELLANT, V. FRED WEBORG, APPELLEE.

7 N. W. (2d) 65

FILED DECEMBER 18, 1942. No. 31456.

*C. O. Stauffer* and *McKenzie & Dugan,* for appellant.

*Walter M. Hopewell* and *John L. Barber, Jr., contra.*

Heard before SIMMONS, C. J., EBERLY, CARTER, MESS-MORE and YEAGER, JJ.

SIMMONS, C. J.

Plaintiff here seeks to recover damages for personal injuries caused by a fall from the roof of a barn upon which he was working for the defendant. At the close of plaintiff's case, the court sustained the defendant's motion for an instructed verdict. Plaintiff appeals. We conclude that the trial court erred.

The issue here presented is whether or not the plaintiff offered evidence sufficient to sustain a verdict for some amount.

Defendant undertook to place a corrugated iron roof on his barn. The barn was about 60 feet long with sides about

22 feet in height. The barn had a gambrel roof. The lower, and more perpendicular, slope was about 10 or 12 feet wide. The upper slope about 8 feet wide. Defendant first employed one Carl Johnson, a carpenter. He built a scaffolding along the south side of the barn. The uprights, placed 8 to 10 feet apart, were of 2" by 4" or 2" by 6" material and extended up to about the eave of the barn. A 2" by 4" was nailed from the barn to the uprights at about 18 feet from the ground. Upon these horizontal timbers were placed "planks" forming a platform. Upon the outer edge of the plank was placed a 2" by 4". Plaintiff, in his brief here, sets out a more detailed description of the construction of the scaffold, and the manner in which it was fastened to the barn. We are unable to find evidence in the record further than that above set forth.

To do the work on the lower section of the roof, a ladder was placed on the platform, its base against the 2" by 4" and in that position resting on the lower slope of the roof. A second ladder was hooked over the ridge of the roof and rested on the upper slope. The pieces of iron, 30 inches in width and from 8 to 12 feet in length, were then handed up to the workmen who, working on the ladders, put and nailed the iron in place.

The scaffold had been built and a part of the roof put on when Johnson, the carpenter, asked the plaintiff to assist in the work. Plaintiff was not a carpenter. He weighed over 200 pounds. He went to defendant's farm to begin work. He at that time saw the scaffold. He did not "know anything was wrong" with it; it "looked sound" and "all right" to him.

The two men worked during the forenoon. In the afternoon four men were working. Johnson, the carpenter, was working from the ladder on the upper slope of the roof, the plaintiff and another man were on the ladder on the lower slope and defendant was on the ground passing up the pieces of iron roofing. Plaintiff was nailing on a piece of iron when he heard the scaffold "creak," the ladder moved slowly, then "went over fast," and the scaffold went

"down" also. Plaintiff testified that he does not "know just what happened." There is no evidence as to what caused the scaffold to "creak" and "go down." Plaintiff fell to the ground, sustaining the injuries for which he seeks to recover his damages. Plaintiff states, in his brief here, that "the evidence does not disclose that there was any apparent defect in the erection or construction of the scaffold." Plaintiff's theory appears to be that the weight of the two men on the ladder was a force pushing the scaffold away from the barn, and that the horizontal timbers upon which the platform rested were pulled loose from the barn causing the scaffold to go down. There is no evidence that the accident happened that way.

Plaintiff in his petition alleged his employment requiring him to work upon the ladder on the roof of the barn, that the ladder rested upon the scaffold, that the scaffold was erected before his employment, that while working the scaffold gave way, resulting in his fall and injury. He alleged that his injuries were caused "by the carelessness and negligence" of the defendant in several particulars which plaintiff summarized in his brief as follows: "The negligence complained of consisted in requiring the plaintiff to perform his services upon the ladder which rested upon the scaffold, when the scaffold had not been securely fastened to the barn, and had not been erected in a safe, suitable and proper manner."

Defendant for answer denied generally, admitted plaintiff's employment, alleged that plaintiff and his fellow servant Carl Johnson were carpenters of experience; that the risk of injury was incident to the employment; that plaintiff knew or should have known of the materials and manner of construction of the scaffold; that he had ample time to examine and test the scaffold and had assumed the risk of being injured; that if the scaffold was negligently constructed the negligence was that of the coemployee Carl Johnson; and that the scaffold gave way as a result of an "Act of God," to wit, a "terrific gust of wind."

Defendant gave as his reasons for requesting a directed

verdict (1) that plaintiff was guilty of negligence more than slight, (2) plaintiff assumed the risk, (3) negligence of a fellow servant, (4) contributory negligence of the plaintiff.

The factual situation may be summarized as follows: Johnson, the carpenter, built the scaffold for the defendant; it was used in placing some of the iron on the roof; after the scaffold was built the plaintiff was employed to assist in the work; the plaintiff, using the scaffold, worked for one-half a day without incident; in the afternoon two men were on the ladder which rested on the scaffold when something caused the scaffold to go down and plaintiff to be injured.. Is this evidence sufficient to require submission of defendant's liability to a jury?

Plaintiff rests his case upon section 48-421, Comp. St. 1929, which provides: "All scaffolds * * * ladders, supports or other mechanical contrivances used in the erection, repairing, alteration * * * of any house, building * * * shall be erected and constructed in a safe, suitable and proper manner."

This is a part of the statute enacted originally as a part of section 1, ch. 65, Laws 1911, in an act providing "for the protection and safety of persons in and about the construction, repairing * * * of buildings * * * ," etc. The original act set up a comprehensive code of requirements and provided for criminal penalties for its violation, and further provided that for any injury to persons or property, occasioned by any violation of or failure to comply with any of its provisions, "a right of action shall accrue to the party injured, for any direct damages sustained thereby," and provided who should be liable in such an action. Laws 1911, ch. 65, sec. 11.

This act was subsequently repealed by chapter 190, Laws 1919, and reenacted (pages 562 to 567, inclusive) with many changes, and in particular section 11 of the original act was amended so as to provide only that: "The continuance by any person in the employ of any such operator shall not be deemed an assumption of the risk of such em-

ployment." Laws 1919, ch. 190, title IV, art. IV, sec. 31. The legislature has therefore repealed the specific provision providing that a cause of action accrues for the violation or failure to comply with provisions of the act. The act, as so reenacted, is now sections 48-421 to 48-431, Comp. St. 1929.

Two questions then arise: (1) Considering the repeal of the provision in section 11 above cited, does a cause of action exist where injury results from a failure to comply with the mandatory provisions of section 48-421, *supra?* (2) What facts must a plaintiff establish to support a verdict in his favor?

We early adopted the rule that, when the legislature reenacts a law, it thereby adopts the judicial construction which has theretofore been placed upon it by this court. *State v. Cornell,* 54 Neb. 647, 75 N. W. 25. And, as subsequently stated, the legislature will be presumed to have known the effect which such statute originally had, and by its reenactment to have intended that that same effect should again be had. *Shandy v. City of Omaha,* 127 Neb. 406, 255 N. W. 477.

*Strahl v. Miller,* 97 Neb. 820, 151 N. W. 952, was decided after the passage of the act in 1911 and before the passage of the 1919 act. We there said: "When a statute commands or prohibits a thing for the benefit of a person, he shall have a remedy upon the same statute for the thing enacted for his benefit, or for a wrong done him contrary to its terms. But it must be affirmatively shown that the plaintiff suffered some injury in consequence of the failure of the defendant to comply with the statute, and that such injury resulted proximately from such failure. The fact that the statute does not in terms impose civil liability is immaterial. It is not necessary to the maintenance of an action that the statute so expressly provide."

It follows that the legislature, in reenacting in 1919 the cited provisions from section 1 of the original act, and in omitting the provisions of section 11 to which reference has been made, did not thereby deny a remedy to the employee upon the statute.

It further follows that the legislature by reenacting the provisions of the original act adopted the judicial construction which had theretofore been placed upon it.

From this record there can be no question but that plaintiff's injury resulted from the collapse of the scaffold. Does the fact that the scaffold creaked and went down "fast" carrying the ladder and the plaintiff with it establish that the scaffold was not "erected and constructed in a safe, suitable and proper manner," or must the plaintiff in addition thereto offer evidence as to the particulars in which the scaffolding was defective and show what caused the scaffold to collapse?

In construing legislation of the class herein considered, this court has long followed the rule that a failure to perform a mandatory duty enjoined by statute is negligence *per se,* and if any person to whom the duty is owed, or for whose protection the statute is enacted, is injured in consequence of such violation a case is made. *Tralle v. Hartman Furniture & Carpet Co.,* 116 Neb. 418, 217 N. W. 952, and cases there cited.

In *Butera v. Mardis Co.,* 99 Neb. 815, 157 N. W. 1024, decided in 1916, we had for consideration the right of an employee to recover against the contractor and the owner of a lot upon which a building was being erected. Action was brought under the provisions of the original act, and in particular sections 1 and 11. We there held "the intention of the statute is that the employer is to be an 'insurer as to furnishing such a place as it requires,'" and that "the employee may confidently rely upon the performance of this duty by his employer." It was there pointed out that statutes such as ours appear to have originated in New York.

In *Caddy v. Interborough Rapid Transit Co.,* 195 N. Y. 415, 88 N. E. 747, decided in 1909, the court, in discussing their similar statute, said that the obvious purpose of the legislature was "to impose upon the employer the affirmative and imperative duty to furnish to his employees stagings and scaffoldings for certain purposes that are safe,

suitable and proper, regardless of the employer's knowledge or negligence in the matter. This is absolute and unequivocal. Whenever a scaffold is furnished or caused to be furnished by an employer to be used in erecting, repairing, altering or painting a house, building or structure, it must be safe, suitable and proper, or the employer is liable."

Likewise, in *Butera v. Mardis Co., supra,* citation was made to the Wisconsin case of *Koepp v. National Enameling & Stamping Co.,* 151 Wis. 302, 139 N. W. 179.

In *Bruce v. Northern Boiler & Structural Iron Works,* 152 Wis. 188, 139 N. W. 729, the Wisconsin court in referring to the *Koepp* case, said: "It was there held that if an employer personally furnished, or through another caused to be furnished, any of the prohibited articles for the purposes specified in the statute, he was liable to the employee for the damages proximately resulting therefrom to such employee, unless it appeared that the employee assumed the risk or was guilty of contributory negligence."

In *Olson v. Whitney Bros. Co.,* 160 Wis. 606, 150 N. W. 959, the court, referring to the Wisconsin statute, said: "It prohibited an employer in certain kinds of labor from furnishing scaffolding, hoists, stays, ladders, or other mechanical contrivances that were 'unsafe, unsuitable or improper.' The statute did not define the words * * * and the court * * * held that if an unsafe appliance of the kind mentioned was furnished and an accident to an employee resulted while engaged in the labor specified in the statute, the employer was liable unless he would show assumption of risk or contributory negligence or both. It mattered not that he might himself be free from negligence. In that sense he was an absolute insurer of the safety of the appliance."

In *Stewart v. Ferguson,* 164 N. Y. 553, 58 N. E. 662, the court construed section 18 of their act (which is similar to our section 48-421) and section 19 of their act setting out the requirements as to the amount of weight a scaffold should be constructed to bear and said, the scaffold's fall,

"in the absence of evidence of other producing cause, points to the omission of the duty enjoined by the statute upon the defendant to the plaintiff in its construction, and points to it with that reasonable certainty which usually tends to produce conviction in the mind in tracing events back to their causes, and thus creates a presumption. It is circumstantial evidence, and if it does convince the jury, it justifies their verdict." The same rule was applied when construing their section 18 in *Huston v. Dobson,* 138 App. Div. 810, 123 N. Y. Supp. 892. These cases have been repeatedly followed by the courts of that state.

The decision in *Caddy v. Interborough Rapid Transit Co., supra,* and *Stewart v. Ferguson, supra,* had been made by the New York court before the passage of our original act. The Wisconsin decisions to which reference has been made were made after the passage of our original act, but before its reenactment in 1919. Likewise, before the 1919 act was passed the attention of the legislature was called to the construction placed upon similar acts by those states, which we reviewed in *Butera v. Mardis Co., supra.* We think it proper to hold that the legislature, under these circumstances, by reenacting the statute accepted the construction placed upon the act by those states.

In *Minneapolis & St. Louis R. Co. v. Gotschall,* 244 U. S. 66, 37 S. Ct. 598, the court had before it a case where plaintiff's intestate, a brakeman, was killed. The train separated because of the opening of a coupler on one of the cars, resulting in an automatic setting of the emergency brakes and a sudden jerk which threw the employee off the train and under the wheels. The jury were permitted to infer negligence on the part of the employer from the fact that the coupler failed to perform its function, there being no other proof of negligence. The employer insisted that this was error. The court, conceding "in the fullest measure" the correctness of the rule "that negligence may not be inferred from the mere happening of an accident except under the most exceptional circumstances," held that such rule was not controlling of the case "in view of the posi-

tive duty imposed by the statute upon the railroad to furnish safe appliances for the coupling of cars." And here there was a positive duty imposed by statute upon the defendant to furnish a scaffold "constructed in a safe, suitable and proper manner."

Defendant cites to us decisions of this and other courts not based upon the mandatory provisions of safety statutes. Obviously, they are not controlling. Plaintiff likewise cites *Fryer v. St. Louis-San Francisco Ry. Co.*, 333 Mo. 740, 63 S. W. (2d) 47, wherein recovery was sought under the federal boiler inspection act. There the evidence indicated not faulty equipment but faulty handling of the equipment by the servant. In that opinion the court in discussing the federal safety appliance act referred to the provision requiring secure handle-holds on the ends and sides of each car and said: "If a grab-iron does not hold a man it is not secure. Therefore, if it is shown that a grab-iron gave way with a man who attempted to use it, that would be sufficient to show that it was not secure." So here, if a scaffold gives way with a man who attempts to use it, that would be sufficient to show that it was not constructed in a safe, suitable and proper manner. The Missouri court further cites *Minneapolis & St. Louis R. Co. v. Gotschall, supra*, with approval and distinguished that case from the one it was considering.

Holding that the denial of the benefits of the rule of *res ipsa loquitur* to a servant, simply because he is a servant, was unreasonable and unjust, the supreme court of Washington in *Cleary v. General Contracting Co.*, 53 Wash. 254, 101 Pac. 888, applied that rule in a scaffolding case and likewise adhered to it in *Penson v. Inland Empire Paper Co.*, 73 Wash. 338, 132 Pac. 39.

The supreme court of California said in *Nolen v. F. O. Engstrum Co.*, 175 Cal. 464, 166 Pac. 346: "Scaffolds built for such purposes do not usually break or fall with the weight of the workmen, if properly constructed. The fact that while the plaintiff was at work upon the scaffold it fell and precipitated him to the ground was of itself sufficient

evidence that the scaffold was defectively constructed. The plaintiff testified that he felt the supports giving away at the time of falling. From this there would be a reasonable inference that the supports were insufficient, either because they were too weak to sustain the weight or because they were not sufficiently nailed. The doctrine of *res ipsa loquitur* applies."

In *Rocha v. Payne,* 108 Neb. 246, 187 N. W. 804, it was urged that the doctrine of *res ipsa loquitur* was not applicable to an action for personal injuries by a servant against his master. This court there said: "We are unable to concur in this contention. The doctrine * * * is frequently applied to cases of this character." In *Miratsky v. Beseda,* 139 Neb. 229, 297 N. W. 94, temporary bleachers collapsed. No actual negligence was proved. The plaintiff contended that negligence could be implied from the collapse of the structure itself. We there held: "Where a structure, the collapse of which causes an injury, is shown to be under the management of a defendant, and the collapse is such as in the ordinary course does not happen if those who have its management use proper care, the collapse affords reasonable evidence, in the absence of explanation by the defendant, that it arose from want of care." Paraphrasing the language used by us in that opinion, and in full accord with the authorities herein cited, we hold that plaintiff had a right to rely upon the safe condition of the scaffold provided for him. In the ordinary course of things, such scaffolds do not collapse if proper care is used in their construction and maintenance. The collapse of the scaffold affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose because the scaffold was not constructed in a safe, suitable and proper manner.

It follows that the trial court erred in directing a verdict in defendant's favor.

REVERSED.