**Charles A. ANGLEN, Appellant,**

v.

**BRANIFF AIRWAYS, Inc., a corporation,
Appellee.**

**No. 15529.**

United States Court of Appeals
Eighth Circuit.

Nov. 5, 1956.

Ed V. Sweeney, Monett, Mo. (Sylvan Bruner, Pittsburgh, Kan., was with him on the brief), for appellant.

Max A. Patten, Joplin, Mo. (Coyne & Patten, Joplin, Mo., were with him on the brief), for appellee.

Before GARDNER, Chief Judge, and SANBORN and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal from a judgment in a personal injury action tried to a jury. At the close of the plaintiff's (appellant's) evidence, the defendant (appellee) moved for a directed verdict. The motion was granted. From the ensuing judgment for the defendant, the plaintiff has appealed.

The complaint of the plaintiff is based upon the claim that while working at the Municipal Airport at Joplin, Missouri, where he was employed by the Southern Missouri Air Service in servicing planes, he fell from a plane and was injured as the result of using a defective ladder furnished by the defendant for use in servicing its planes, and that the fall and his injuries were due to the negligence of the defendant in failing to furnish a safe ladder, in failing to keep it in a safe condition, and in failing to warn the plaintiff that it was dangerous for him to use it.

The defendant denied that it was negligent in any of the respects asserted by the plaintiff, and alleged that whatever injuries he received as a result of the fall were due to his own negligence or to the assumed risks of his occupation.

The plaintiff's case consisted almost entirely of his own evidence. It was as follows:

From January, 1953, to April 30, 1954, he was working for the Southern Missouri Air Service, which had a contract with the City of Joplin to service all commercial aircraft using the Municipal Airport. The Airport was used by the defendant, Braniff Airways, Inc. (Braniff), and American Air Lines (American). The plaintiff was engaged in fueling and servicing their planes or ships. Two boys worked with him— Ronnie Smith and Warren Anderson. Braniff used Texas Company products. American used Phillips Petroleum products. Texaco products for Braniff planes were from a tank truck of the Texas Company, and Phillips products for American planes were from a Phillips Company truck. It was necessary to use a ladder in servicing planes. Braniff and American each furnished a ladder for use in servicing its planes. Braniff owned the ladder it furnished. The ladder was kept on the side of the Texaco truck. The ladder furnished by American was kept on the side of the Phillips truck. Neither the plaintiff nor Southern Missouri Air Service had any control over either of the ladders. Bran-

iff and American had control over their respective ladders. The plaintiff had nothing to do with the repair or upkeep of the Braniff ladder. Whatever upkeep or repair was done on the Braniff ladder while the plaintiff was working at the Airport was done by Braniff employees. On one occasion such employees took the ladder off the truck and painted it together with other equipment. They once took the ladder and repaired a leatherette lacing near its top, where it rested against the wing of a plane. When the employees of Braniff took the ladder, they did not ask for permission.

To service Braniff planes, which carried gasoline in their wings, it was necessary to use the Braniff ladder to get onto the wing of the plane, which was about 8 feet from the ground. The ladder which Braniff furnished was a bridge type ladder. It had two legs, the steps strutted between. The ladder was about 10 feet long. The top of the ladder had a curve which rested against the wing when the ladder was in use. The base of the ladder was two steel triangular pegs about 3 or 4 inches long and about ⅝ths of an inch thick. At the bottom, these pieces of steel had originally been drawn out to a point, but, by the time the plaintiff went to work at the Airport, these pointed ends had been worn from use until they were rounded like the end of a broomstick. There was nothing on the bottom of the ladder, no cushion of any sort, just the bottom of the steel. The plaintiff used the ladder about once a day during the time that he was working at the Airport. When gassing a plane, he would place the ladder up against the wing of the plane. There was no hook or device of any sort to secure the top of the ladder to the wing, and there was nothing to secure the bottom of the ladder to the pavement on the loading ramp where the servicing was done. The ramp where the servicing was done was paved with concrete. The pavement, from years of use, had a residue of oil on it which caused the surface of the ramp to be slippery when the ramp was moist.

The ladder did not slip with the plaintiff prior to April 30, 1954, but it had, to his knowledge, slipped with Ronnie Smith shortly before Christmas, 1953. The plaintiff reported that incident to Braniff's manager, Mr. Celinsky, and asked him to get some rubber shoes or boots to make the ladder safe. Celinsky said that he would. He told the plaintiff to continue to use the ladder and that it was safe if used with reasonable caution. There was no other ladder available. The ladder slipped with Warren Anderson about February 15, 1954. The plaintiff reported this to Celinsky, who said he thought the ladder was safe enough and would not slip. The plaintiff continued to use the ladder, relying on Celinsky's judgment "because he was Braniff's manager, and it was his ladder."

On April 30, 1954, about 9 a.m., the plaintiff was servicing a Braniff plane. He used the Braniff ladder to climb to the wing. When he stepped from the wing to climb down, the ladder slipped from under him—the legs of the ladder slipped on the pavement, causing him to fall. There was nothing on the legs to hold them steady. The ladder which had been furnished by American for use in servicing its planes was equipped with rubber shoes, which would always hold. It was rubber shoes of this type, which were in general use on such ladders, that the plaintiff had asked Braniff's manager to put on Braniff's ladder.

Aside from the plaintiff's evidence, there was the testimony of Ronald L. Smith, who worked at the Airport with the plaintiff between January, 1953, and April, 1954. He testified that the ladder Braniff furnished for servicing its planes was not equipped with protective devices to prevent skidding; that it slipped with him; that he so reported to the plaintiff in November or December, 1953; that the ladder slipped with him (Smith) again about the first of April, 1954; that he reported that incident to the plaintiff and Celinsky, Braniff's manager; that the last time he (Smith) reported to Celinsky about the ladder

slipping, which was about a month before the plaintiff's fall, Celinsky said he would try to take some favorable action, but nothing was done; that the ladder furnished by American was safer and had never slipped with him (Smith).

The defendant did not rest its case at the close of the plaintiff's evidence, but, as heretofore stated, moved for a directed verdict in its favor on the grounds that the evidence of the plaintiff conclusively showed that it was his negligence that was the sole cause, or a contributing cause, of the accident and the resulting injuries; that the defendant was no more than a gratuitous bailor of the ladder, and was under no duty to warn the plaintiff or to maintain or repair the ladder; and that there was no proof that the defendant had been negligent.

In granting the motion of the defendant, the court said:

"Now, the Defendant Braniff under the evidence loaned—we in law call it a bailment—a ladder to * * Southern Missouri Air Service Company—that may not be its exact name but that is enough to indicate its identity. Braniff at that time was under obligation to furnish a ladder which was reasonably safe, or to advise Southern Air Service, to whom it bailed it, of any defects therein of which it had knowledge. Now, under the evidence here there is no showing at all that when the ladder was loaned by Braniff to Southern Air Service there was any defect in it or anything the matter with it. What happened thereafter to the ladder was a matter of maintenance and the duty of maintaining the ladder while it was being used, was upon the party that had it and used it, namely, Southern Air Service.

"The plaintiff here was an employee, not of Braniff, but of Southern Air Service. So under the law the duty of maintaining a reasonably safe place to work and reasonably safe tools was the duty of the plaintiff's employer, Southern Air Service, not Braniff, who had but loaned the ladder some time earlier. There could be in no instance, in no case, any greater liability or responsibility upon Braniff to the plaintiff, if as much, than it owed to Southern Air Service, and there is no showing that when Braniff put the ladder, or permitted it to be in the possession of Southern Air Service for the latter's use that there was anything the matter with it. You will recall the testimony is by reason of its use, being driven around on concrete, the metal ends of the ladder had become worn as the end of a broom stick. That was a matter of progression by use of the ladder by Southern Air Service you see. I am, therefore, satisfied, under the law of Missouri, the facts as shown in the evidence do not amount to such as constitute a legal liability of the Defendant Braniff, although those facts be assumed, as they are, to be all true."

If the only justifiable inference which could have been drawn from the plaintiff's evidence, viewed in the light most favorable to him, was that Braniff loaned the ladder in suit to Southern Missouri Air Service for its use, and was a mere bailor, the judgment appealed from should be affirmed.

 The plaintiff's contention is that, under his evidence, it was at least a reasonable inference that Braniff not only furnished the ladder used in servicing its planes at the Joplin Airport, but owned the ladder, retained control of it, and was under an implied agreement with Southern Missouri Air Service to keep the ladder in repair for use with Braniff planes. We cannot say that such an inference reasonably could not have been drawn by the jury. We held in Eggers v. Armour & Co. of Delaware, 8 Cir., 129 F.2d 729, 732 (a case in which a verdict was directed for the defendant at the close of the plaintiff's evidence), that the existence of a con-

tract, like any other fact, can be proved by circumstantial evidence. In a jury case, where conflicting inferences reasonably can be drawn from evidence, it is the function of the jury to determine what inference shall be drawn. Compare, Lavender v. Kurn, 327 U.S. 645, 652–653, 66 S.Ct. 740; 90 L.Ed. 916, and Chicago & N. W. R. Co. v. Grauel, 8 Cir., 160 F.2d 820, 825–826. It is only where the evidence is all one way, or so overwhelmingly one way as to leave no doubt what the fact is, that a court is justified in taking a case from a jury. See Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720; and compare, Hoyt v. Clancey, 8 Cir., 180 F.2d 152, 154–155.

■ We think that, at the close of the plaintiff's evidence, it did not conclusively appear that Braniff was a mere bailor of its ladder and was under no duty to keep it from becoming a menace to those who might be required to use it.

In Hudson v. Moonier, 8 Cir., 1938, 94 F.2d 132, this Court, just prior to Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, ruled that, under the applicable general law, one leasing trucks to a contractor and agreeing to keep them in repair was not entitled to a directed verdict when sued by an employee of the contractor injured by one of the trucks as a result of defective brakes and a defective horn. After Erie Railroad Co. v. Tompkins, certiorari was granted in the Moonier case, 304 U.S. 397, 58 S.Ct. 954, 82 L.Ed. 1422, and the case was remanded to have this Court consider whether, under Missouri law, the defendant could be held liable. The reargument of the case was before a division of this Court consisting of Judges Stone, Gardner and Thomas. They ruled that, under Missouri law, one who undertakes to furnish a contractor with instrumentalities and appliances used in performance of the contract, retaining control over them for purposes of repair, owes the contractor and his employees the duty to use due

care in that regard, and is liable to an employee of the contractor for neglect of that duty, resulting in injury. Hudson v. Moonier, 8 Cir., 102 F.2d 96, 99, certiorari denied 307 U.S. 639, 59 S.Ct. 1037, 83 L.Ed. 1520.

So far as we are advised, the law as stated by this Court in the Moonier case is still the law of Missouri. The case was cited by the Supreme Court of Missouri in Blankenship v. St. Joseph Fuel Oil & Mfg. Co., 360 Mo. 1171, 232 S.W.2d 954, 958–959, but was distinguished on the ground that the Blankenship case "involves no special duty on the bailor; as plaintiff's undisputed evidence establishes that his employer, the Construction Company; had the control, maintenance, and supervision of the sweeper [the appliance which caused the injury], and defendant had no obligation with respect thereto." See also, Wolfmeyer v. Otis Elevator Co., Mo., 262 S.W.2d 18, 22, where the Moonier case was again referred to, and again distinguished.

We think the defendant in the instant case, assuming that it was in a position to show that it was a mere bailor of the ladder used by the plaintiff and was under no duty to maintain or repair it, made a serious mistake in moving for a directed verdict at the close of the plaintiff's evidence. In our opinion, the case was not at that time ripe for a ruling on such a motion. See and compare, Barnett v. Terminal R. Ass'n of St. Louis, 8 Cir., 200 F.2d 893, 896, certiorari denied 345 U.S. 956, 73 S.Ct. 938, 97 L.Ed. 1377; Lanier v. Great Atlantic & Pacific Tea Corp., 8 Cir., 205 F.2d 292.

We are not to be understood as ruling that, upon a retrial of this case, the plaintiff, at the close of all of the evidence will necessarily have made a case for the jury. We go no further than to say that, in our opinion, the defendant, at the close of the plaintiff's evidence, was not entitled to a directed verdict.

The judgment appealed from is reversed, and the case is remanded for a new trial.