CONTINENTAL CAN COMPANY, Inc., a corporation, Appellant,

v.

Bernard F. HORTON and LeRoy L. Wade & Son, Inc., a corporation, Appellees.

No. 15855.

United States Court of Appeals
Eighth Circuit.

Dec. 30, 1957.

See also 19 F.R.D. 429.

John L. Barton, Omaha, Neb. (Raymond M. Crossman, Thomas C. Quinlan and John R. Barton, Omaha, Neb., on the brief), for appellant.

George B. Boland, Omaha, Neb. (John F. Brennan and A. Lee Bloomingdale, Omaha, Neb., on the brief), for appellees.

Before GARDNER, Chief Judge, and WOODROUGH and VAN OOSTERHOUT, Circuit Judges.

WOODROUGH, Circuit Judge.

This is an appeal from a judgment in favor of plaintiff in a personal injury action.

Bernard F. Horton instituted this action in the United States District Court for Nebraska against Continental Can Company, Inc., to recover damages for personal injuries sustained when a scaffold upon which he was working collapsed. LeRoy Wade & Son, Inc., Horton's employer at the time of this accident, was joined as a party defendant because of subrogation rights for certain payments made to Horton under the Nebraska Compensation Act. R.R.S.1943, § 48–101 et seq. Federal jurisdiction was established by reason of diversity of citizenship.

In his complaint plaintiff alleged that on December 27, 1954, defendant was engaged in the construction of a manufacturing plant in Omaha, Nebraska; that defendant had supplied a scaffold to the workmen engaged in the plant construction; that on December 27, 1954, while plaintiff was on top of the scaffold, it gave way; and that by reason of the negligence of defendant in failing to erect, construct and maintain the scaffold in a safe, suitable and proper manner, in compliance with the Statutes of the State of Nebraska,[1] plaintiff was precipitated to the floor and was thereby subjected to severe and permanent physical injuries.

Defendant, in its answer, admitted the happening of the accident but denied all allegations of negligence and pleaded that the scaffold was erected by employees of the Wade Corporation and thereafter was borrowed from defendant by various crafts, including the Wade Corporation, for temporary use in connection with their construction of the defendant's plant; that the use of the scaffold by the Wade Corporation and the other crafts was an accommodation only; that the scaffold was a safe, suitable and proper scaffold; and that whatever injuries plaintiff received were due to his own negligence.

Defendant's motions for dismissal, directed verdict and an instructed verdict in its favor were overruled and the case was submitted to the jury on instructions, to which no exceptions were taken. Verdict was returned for plaintiff in the amount of $25,000.00 and judgment was entered accordingly. This appeal followed.

Defendant in seeking reversal contends: (1) that the court erred in overruling its motions for dismissal, directed verdict and judgment notwithstanding the verdict because there was insufficient evidence upon which to submit the case to the jury; (2) that the court erred in allowing the jury to speculate on the is-

---

1. Section 48–425, Reissue Revised Statutes of Nebraska, 1943, provides in pertinent part:

 "All scaffolds, hoists, cranes, stays, ladders, supports or other mechanical contrivances used in the erection, repairing, alteration, removal or painting of any house, building * * * or other structure, shall be erected and constructed in a safe, suitable and proper manner * * *."

sue of negligence when certain inferences sought to be created by plaintiff were not supported by basic proven fact or circumstances; and (3) that plaintiff's negligence was more than slight, was the proximate cause of his injuries, and therefore prevented recovery under Nebraska law.

 The controlling issue for determination on this appeal is whether or not the court should have sustained defendant's motion for directed verdict or judgment notwithstanding the verdict. Consideration of that question is governed by Nebraska law, the state where the accident happened, and the jury having found the issues in favor of the plaintiff, we will view the evidence in the light most favorable to him, all conflicts in the evidence being resolved in his favor and if the evidence is sufficient to make a case that must go to the jury, we will not disturb the verdict. Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720; Stephenson v. Steinhauer, 8 Cir., 188 F.2d 432, 434; Burhoop v. Brackhan, 164 Neb. 382, 82 N.W.2d 557; Raile v. Toews, July, 1957, 165 Neb. 184, 185, 84 N.W.2d 199. So viewed, the evidence may be summarized as follows:

 It appears from the record that defendant, engaged in the manufacture of cans for commercial use, was having a manufacturing plant constructed at 4133 South 72nd street in Omaha, Nebraska, and that in February, 1954, the building was completed but the operational machinery had not been installed. In February, 1954, LeRoy Wade & Son, Inc., was awarded the contract to unload and install the defendant's heavy machinery, to complete the makeup and installation of the overhead steel structures and install the overhead conveyor lines required in the plant. The contract provided, among other things, that materials purchased and expendable tools used by the Wade Corporation were to be charged to defendant at cost plus 10%; that defendant was to be charged for tools and equipment, which were not expendable and not provided for in the contract, at a rate determined by a specified manual of equipment rates. Scaffolds were not expendable equipment and were not provided for in the contract.

Plaintiff was employed by the Wade Corporation as a structural iron worker and was engaged in the makeup and installation of overhead steel structures and the installation of machinery in defendant's plant until December 27, 1954, the date of this accident.

The scaffold in question was ordered by defendant's plant engineer, on behalf of defendant, for the use of defendant's maintenance men. It was delivered to defendant in January, 1954, and was stored in the Wade Corporation's warehouse together with defendant's other maintenance equipment. Robert Hammond, superintendent of the Wade Corporation testified that about March 1, 1954, Carl Gott, project engineer for defendant, ordered him to assemble the scaffold. Defendant's plant engineer testified that after the scaffold was delivered to the plant site, he objected to its use by the various crafts engaged in constructing the plant and he had it chained and locked to a column to prevent further use, however, within a few days he saw that the scaffold was being used by every craft in the plant, including Wade's men, and it continued in such use throughout the year 1954.

Evidence was presented to the effect that during the week prior to December 27, 1954, the scaffold was not used by Wade's men since they were unloading machinery, installing a hand rail and grading machinery. Plaintiff testified that during the week prior to his injury he saw the scaffold in the possession of defendant's maintenance men. They had disassembled it and were removing it from the main building. On December 22nd or 23rd the scaffold was being used in spray painting the east windows of the plant, although the evidence was in conflict as to whether a paint contractor on the job or defendant's maintenance men were doing the painting. Plaintiff and Wade's superintendent testified that the men painting the windows were not from the paint contractor but were de-

fendant's maintenance men and defendant did not produce evidence to show whether or not its maintenance men had used the scaffold to paint the windows or whether the paint contractor had painted them. Defendant's plant engineer testified that he did not have painters working for the defendant in December, 1954, however, he admitted that it was in the province of defendant's maintenance men to do painting when the job was not of such a large amount that he would call a paint contractor.

Wade's men did not work on December 24, 25, or 26, 1954, and at the commencement of the work day on December 27, the scaffold was standing, with its legs extended 12 to 16 inches, in front of the battery bay next to the east wall. The windows of the battery bay had been spray painted. The scaffold was composed of four and one-half sections giving it an approximate height of 25 feet. The work plan for Wade's men on December 27, included laying the scaffold over on its side and moving it 30 to 40 feet from its position in front of the east windows in order to use it in erecting hangers for the overhead conveyors. Prior to the move, Wade's superintendent mounted the scaffold to look for loose tools. Culiver, plaintiff's supervisor also went to the top of the scaffold, returned to the floor and then directed plaintiff to go up and wire the wooden platforms down so they would not fall when it was moved. Plaintiff went to the top of the scaffold and immediately felt the northeast leg of the scaffold give way. The falling scaffold knocked him against the east wall and he fell to the floor below.

The scaffold was in evidence and examination reveals that it consists of sections and half sections, made of aluminum pipe, which can be placed one upon the other to regulate the height of the scaffold. Each section has an inside diagonal ladder which leads to the section above and the base section (or bottom section) has four legs, each of which is hollow and has four splits at its lower end. These split leg ends are threaded on the inside and each hollow leg fits over a threaded solid shaft, to which the wheel housing and six inch solid rubber wheel is attached in such a manner that the hollow leg will slide up and down on the shaft, thereby allowing the height of each leg to be varied individually. When the leg is extended it is held in place by means of a tension ring or locking ring which slides down the outside of the hollow leg over the split threaded ends and forces the split threaded ends together and against the threaded shaft, thereby preventing the shaft from moving up or down inside the hollow leg. When the tension ring is completely down to its locking position, it is held in place by a small spring lock which catches on the upper lip of the tension ring and holds the ring down and in place. In order to release the locked ring, pressure is put on the spring lock, a small amount of pressure being sufficient, depressing it, and it then allows the safety ring to slide up and thereby release the split ends of the hollow leg and free the wheel housing shaft. If the safety or tension ring is not lowered far enough for the spring lock to take hold, the weight of the scaffold will force the split leg ends to expand, forcing the safety ring up and allowing the leg to slide down over the shaft.

Immediately after the collapse of the scaffold it was discovered that the northeast leg of the scaffold had telescoped. Three witnesses testified that the safety ring had not been pushed down into the locking position and locked and that a diagonal cross brace on the base section of the scaffold was broken.

We think this evidence, if believed by the jury, made a prima facie case for plaintiff and in this situation it was necessary for the court to submit the case to the jury.

The Supreme Court of Nebraska in construing Section 48–425, Reissue Revised Statutes of Nebraska, 1943 (set out in footnote number 1), in Johnson v. Weborg, 142 Neb. 516, 521, 7 N.W.2d 65, 68 (reaffirming its decision in Strahl v. Miller, 97 Neb. 820, 151 N.W. 952), held:

"When a statute commands or prohibits a thing for the benefit of a person, he shall have a remedy upon the same statute for the thing enacted for his benefit, or for a wrong done him contrary to its terms. But it must be affirmatively shown that the plaintiff suffered some injury in consequence of the failure of the defendant to comply with the statute and that such injury resulted proximately from such failure. The fact that the statute does not in terms impose civil liability is immaterial. It is not necessary to the maintenance of an action that the statute so expressly provide."

The Nebraska Court in Winterson v. Pantel Realty Co., 135 Neb. 472, 476, 282 N.W. 393, 395 (quoting from Stevens v. Luther, 105 Neb. 184, 180 N.W. 87), stated:

"Statutes requiring protective devices * * * scaffolding statutes * * * and other statutes of like nature, impose a mandatory and affirmative duty upon the owners of such property, * * * the courts generally hold that a failure to perform such mandatory duty so enjoined is negligence per se, and if any person to whom the duty is owed, * * * is injured in consequence of such violation, a case is made."

■ Therefore under Nebraska law the erection of a scaffold which is neither safe, suitable, nor proper is not merely evidence of negligence but is negligence per se and the issue, therefore, is not whether defendant exercised due care in erecting the scaffold, but whether the scaffold was in fact erected and maintained in a safe, suitable and proper manner.

The New York Court of Appeals, in Quigley v. Thatcher, 144 App.Div. 710, 129 N.Y.S. 170, affirmed 207 N.Y. 66, 100 N.E. 596, in construing a similar statute (Section 48–425, R.R.S.Neb., 1943, is patterned after legislation which originated in New York) stated:

"But this statute is one for the protection of workmen from injury, and undoubtedly is to be construed as liberally as may be for the accomplishment of the purpose for which it was thus framed, and under such interpretation we think that a contractor may by course of events become liable to a subcontractor and his employés for the safety of a scaffold, although originally and expressly he assumed no such responsibility."

The defendant in the instant case purchased the scaffold and directed and paid for its erection. Although its plant engineer (possibly realizing the burden cast upon the owner in respect to scaffolds by the Nebraska Statute) attempted to restrict the use of the scaffold for its own maintenance men by chaining it to a pillar, nevertheless, within a few days it was being used by every craft engaged in the construction of the plant and defendant's plant engineer and other supervisory employees of defendant, who were present in the plant and had knowledge of the scaffolds use over the more than 10 month period, took no affirmative action to prevent others from using it. The evidence was clear that allowing Wade's men and the other crafts to use the scaffold in the construction of the plant was a definite business advantage to the defendant. In purchasing the scaffold, which was necessary for the work of its own maintenance men and by allowing the Wade Corporation to use the scaffold, which was essential in the installation of overhead structures and conveyor lines, defendant avoided the necessity of paying for a scaffold under the contract which it would have been obliged to do if Wade had supplied one. There was no showing that the Wade Corporation had a scaffold of their own at the plant site and a scaffold was absolutely essential for the completion of the installation of the overhead steel structures and conveyor lines in the plant.

Defendant argued that it merely loaned the scaffold and, in effect, that it

had delegated the erecting of the scaffolds it kept on the premises to those who used them in the construction of its building. We find no merit in that contention; nor that the scaffold was provided by the defendant-owner to the Wade Corporation as an accommodation only.

As we have observed, defendant's maintenance men used the scaffold from time to time and from the evidence presented the jury could reasonably believe that defendant's maintenance men, just prior to the accident, disassembled the scaffold, removed it from the main building, thereafter reassembled it with the legs extended, used it in painting the plant windows, left it in that position, in an unsafe condition and that it was next used by plaintiff and his co-workers on the day of this accident. There can be no doubt that if the safety ring was not securely locked the weight of Culiver and Hammond, who ascended the scaffold just prior to plaintiff, forced the unsecured safety ring upward so that when plaintiff reached the top of the scaffold, the safety ring was no longer effective in preventing the wheel housing shaft from telescoping into the hollow leg, thereby causing the scaffold to fall.

Evidence was introduced that after the scaffold had fallen a brace on the base section was found to be broken, although it was not established whether the brace was broken before the scaffold collapsed or whether it broke as a result of the fall. Defendant urges that even if the diagonal brace was broken before the fall, it could not cause the safety ring to slip or become unlocked, however, defendant's plant engineer testified that the scaffold vibrated and shook when someone ascended or descended it; that "it shook when used in the plant from March through December, 1954", and numerous repair welds have been made upon the scaffold by defendant to strengthen the supports and braces, although the evidence was in dispute as to when the repair welds were made. From the evidence presented the jury could find that the cross-brace on the scaffold gave way, either because of improper welding by defendant or because of a defective condition when it was purchased, causing the safety ring to vibrate loose, if in fact it was securely locked. The very nature of the scaffold indicates that if the spring lock was worn or out of position a fraction of an inch, when the legs were extended, a sudden vibration or slight jar could cause the spring lock to slip off the narrow lip of the safety or tension ring and allow the weight of the scaffold to expand the split leg ends, forcing the safety ring up, allowing the leg to telescope and the scaffold to fall.

█ Plaintiff's theory is that it was a reasonable inference that defendant furnished the scaffold used in constructing its plant; that defendant owned the scaffold and maintained it and retained control over it; that defendant erected the scaffold the last time before it collapsed; and that defendant was under a duty to erect and maintain the scaffold in a safe, suitable and proper manner. Under the evidence presented we cannot say that such an inference reasonably could not have been drawn by the jury. As stated by this Court in Anglen v. Braniff Airways, 8 Cir., 237 F.2d 736, 739, 740: "In a jury case, where conflicting inferences reasonably can be drawn from the evidence, it is the function of the jury to determine what inference shall be drawn." Cf., Lavender v. Kurn, 327 U.S. 645, 652, 66 S.Ct. 740, 90 L.Ed. 916; Chicago & N. W. R. Co. v. Grauel, 8 Cir., 160 F.2d 820, 825–826; Gibson v. Elgin, Joliet & Eastern R. Co., 7 Cir., 246 F.2d 834, 836, certiorari denied 78 S.Ct. 270. It is only when the evidence is all one way, or so overwhelmingly one way as to leave no doubt what the fact is, that a court is justified in taking a case from the jury. Hoyt v. Clancey, 8 Cir., 180 F.2d 152, 154–155; Anglen v. Braniff Airways, supra, 8 Cir., 237 F.2d at page 740.

Further, this court in National Lead Co. v. Schuft, 8 Cir., 176 F.2d 610, 614, held: "A theory of proximate cause resting in probative circumstances does not become a matter of speculation and con-

jecture by a mere suggestion of other possible causes which are unsupported by any proved facts." Sears Roebuck & Co. v. Peterson, 8 Cir., 76 F.2d 243, 247; Terminal Railroad Ass'n of St. Louis v. Farris, 8 Cir., 69 F.2d 779, 785.

Defendant pleaded in its answer that a fellow employee of plaintiff attempted to adjust the scaffold by manually releasing the tension lock on the scaffold leg and thereby allowed the tubular leg to slide downward to the "down position" and caused the scaffold to tip over. But on the trial of the case no evidence was adduced to sustain this defense.

■ Defendant argues that plaintiff was negligent when he did not inspect each leg and manually test each locking ring before he mounted the scaffold; that he failed to use the ordinary care which the law imposes on all persons; and that in view of plaintiff's contributory negligence he is prohibited from recovery by Nebraska law.

The evidence here shows, however, that immediately prior to plaintiff's ascent of the scaffold on December 27, 1954, he watched both Hammond and Culiver go to the top of the scaffold and return to the floor in safety and without difficulty. The scaffold was on a level floor and, as has been observed, from the construction of the scaffold's safety ring and tension lock, it would be impossible to determine whether the safety ring was securely locked without manually operating each of the four safety rings and testing them to determine whether or not each one was locked. There was not, as defendant contends, an open and patent danger and we do not think plaintiff's failure to manually check each leg of the scaffold before he mounted it was negligence under the circumstances. Indeed there was nothing to indicate to him that an inspection of the safety ring should be made. He saw the scaffold standing apparently secure and two men ascended upon it and descended. On this, and other evidence in the record, we cannot say that plaintiff was guilty of contributory negligence as a matter of law or that he was guilty of more than slight negligence and therefore not entitled to recover.

The Supreme Court of Nebraska, in Johnson v. Weborg, supra, stated: " * * we hold that plaintiff had a right to rely upon the safe condition of the scaffold provided for him. In the ordinary course of things, such scaffolds do not collapse if proper care is used in their construction and maintenance. The collapse of the scaffold affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose because the scaffold was not constructed in a safe, suitable and proper manner." 142 Neb. 516, 526, 7 N.W.2d 65, 70. Cf., Miratsky v. Beseda, 139 Neb. 229, 297 N.W. 94. The Nebraska Statute makes no distinction between the "construction" of scaffolds and the "erection" of them.

■ Under Nebraska law, the court in an action for damages for negligence is required to direct a verdict for defendant if the evidence shows beyond a reasonable dispute that the plaintiff has been guilty of contributory negligence and that such negligence is more than slight as compared with defendant's negligence. Thomison v. Buehler, 147 Neb. 811, 25 N.W.2d 391, 393. But if on all the evidence reasonable minds might fairly differ in their conclusion as to the existence of contributory negligence or as to its degree being more than slight in the circumstances, the question is for the jury to determine. Surface v. Safeway Stores, Inc., 8 Cir., 169 F.2d 937, 939–940 (Neb.). Cf., Halliday v. Raymond, 147 Neb. 179, 181, 22 N.W.2d 614; Meyer v. Platte Valley Const. Co., 147 Neb. 860, 863, 25 N.W.2d 412; Raile v. Toews, supra, 165 Neb. at pages 187–188, 84 N. W.2d at pages 201–202.

■ The trial court here submitted the issue of plaintiff's contributory negligence to the jury under proper instructions, including an instruction on the doctrine of comparative negligence under which plaintiff is not barred from recovery where his contributory negligence is slight and the negligence of defendant is gross in comparison. The test under Nebraska's comparative negligence stat-

ute is not based upon absolute degrees of negligence but rather upon a comparative test of the relative degrees of negligence between the parties. Andelt v. County of Seward, 157 Neb. 527, 60 N.W.2d 604; Roby v. Auker, 151 Neb. 421, 37 N.W.2d 799. Tested by this rule we hold the question of plaintiff's contributory negligence was one of fact and was properly submitted to the jury. The court did not err in denying defendant's motion for directed verdict.

 Defendant argues that plaintiff on this appeal for the first time cites Section 48–425, R.R.S., Neb., 1943, (set out above) and is now changing the theory upon which this case was tried, from common law negligence to statutory negligence. Defendant contends that this theory is not now available to plaintiff because the case was not tried upon that theory. This rule, while it may be invoked by an appellee, is not available to an appellant. All intendments must be indulged in favor of the correctness of the judgment and if the conclusion reached by the court was a correct one, it is not material by what process that conclusion was reached. Gulf, Mobile & Ohio R. Co. v. Williamson, 8 Cir., 191 F.2d 887, 893. Irrespective of this rule, a consideration of the record shows that plaintiff, in his complaint, alleged that defendant was negligent "in failing to erect, construct and maintain said scaffold in a safe, suitable and proper manner in compliance with the Statutes of the State of Nebraska", and there can be no doubt that the court had this statute in mind when it instructed the jury that "if * * * you shall determine that defendant was under the duty to maintain the condition of the scaffold, then it was its duty under the state's law to maintain it in a safe, suitable and proper manner * * * and the failure * * * to erect and construct it. or * * * to maintain it * * * in a safe, suitable and proper manner, would be negligence as a matter of law."

We find no error in the proceedings and judgment. The judgment appealed from is therefore affirmed.