BENJAMIN MILLER, Plaintiff, v. BERNARD WEINBERG, and HARRY RUBENSTEIN, individually, and trading as Atlantic Engineering & Construction Co., Defendants.

(*August* 28, 1962.)

LYNCH, J., sitting.

*H. Albert Young* and *William F. Taylor* (of Morford, Young and Conaway) for Plaintiff.

*E. N. Carpenter, II,* and *William E. Wiggin* (of Richards, Layton and Finger) for Defendants.

Superior Court for New Castle County, No. 1404, Civil Action, 1960.

LYNCH, Judge.

The defendants, Bernard Weinberg and Harry Rubenstein, compose a partnership; they trade as Atlantic Engineering & Construction Co. (they will be referred to hereafter as Atlantic). Atlantic was the general contractor, constructing a number of houses at a sub-division near Wilmington, Delaware, known as Alban Park. Chesin Roofing Company, Inc. (referred to hereafter as Chesin) was the roofing sub-contractor on the project. The plaintiff Miller was one of its employees, and foreman of Chesin's crew.

Miller alleges he fell on October 12, 1959 while working on a scaffold at the construction site. When he fell he claims to have sustained allegedly serious physical injuries, and he has sued.

Miller charges in his complaint that "a scaffold plank on which he was standing broke in half, thereby causing him to fall approximately twenty-five (25) feet to the ground".

I have noted that Miller has had wide and long experience in roofing work; he had been so engaged for some fifteen years prior to the accident. He had at times been in that business for himself. He had himself (as was sometimes customary for roofers) built scaffolds of the type involved in this case. Prior to his accident he had been working off and on on the Alban Park job for some six or seven months. I find these matters as facts on which this case is to be determined.

The record demonstrates that Atlantic engaged the services of Zeglin Carpentry (referred to hereafter as Zeglin) to do all the carpenter work at the building project and that Zeglin constructed the scaffolding from which Miller fell. Miller concedes that Zeglin erected the scaffolding and that Zeglin was an independent contractor.

Neither Zeglin nor Chesin is a party to this suit, either at the suit of Miller or through Third Party Proceedings instituted by Atlantic.

Miller has contended that Atlantic undertook to furnish the scaffold. Miller points to a contract between Atlantic and Chesin and he argues that this contract shows Atlantic agreed to furnish the scaffolding.

This contract between Atlantic and Chesin was made a part of the record by stipulation; to say the least it is ambiguous, and some analysis and construction is in order to determine its precise meaning.

Paragraph 1, *inter alia,* provided that "The Subcontractor [Chesin] will, * *, provide all the materials and perform all of the following work:

"Do all Roofing, Siding, Flashing and Spouting work. * * *"

Paragraph 2 obligated the "contractor" [Atlantic] to furnish drawings, plans and specifications necessary or useful to facilitate progress of the work.

Paragraph 3 provided:

"The *Contractor* will, at all times * * * provide a sufficient number of workmen [and] will at all times during the progress of said work furnish and supply all needful materials * * * in accordance with the plans and specifications covering said work." (Emphasis supplied)

The use of the word "Contractor" in this paragraph 3 creates the ambiguity. Paragraph 1, it is to be noted, required Chesin to "provide all the materials" and to "perform the work" described. Paragraph 3 also obligated someone to "furnish and supply all needful materials".

Paragraph 1 and paragraph 3 are seemingly in conflict; this makes the entire contract ambiguous and its meaning doubtful.

After study of the entire contract I venture the observation that the term "Contractor" in paragraph 3 should read "Sub-Contractor", and I so construe the contract because to so read the contract better expresses the otherwise expressed intent of the parties and what they seemed to have contemplated. There are no provisions other than those mentioned in the contract which spell out any obligation by Atlantic to supply scaffolding. Using the term "Sub-contractor" makes the contract read with more sense and purpose, and as so read it tends to destroy many of Miller's factual contentions. I, therefore, rule there was no expressed assumption of responsibility on Atlantic to furnish the scaffold.

Miller arrived at the job around 8:00 o'clock on the morning of October 12, 1959,—the day of the accident. He worked on the scaffold, from which he later fell, throughout most of the day until the time of the accident. It is clear, therefore, that he had had a chance to look at and over the scaffold from which he fell. He testified that in his opinion the construction of the scaffold was adequate; in fact, he testified that the construction of the scaffold was in the usual form. It appears too that if Miller had not liked the construction of the scaffold, or wanted to move the planks around for whatever purpose he desired, he was perfectly free to do so.

At about 3:30 P. M. the plank on which Miller was standing allegedly broke in half, causing him to fall approximately twenty-five feet to the ground. He was injured by reason of such fall.

Miller's complaint charges several acts of alleged negligence on the part of Atlantic. Atlantic's answers deny

the factual background of these alleged acts of negligence, and the answer affirmatively pleads contributory negligence on Miller's part.

Both sides engaged in pre-trial discovery and the case is now before the Court on Atlantic's motion for summary judgment, based on the matters developed in the course of discovery.

Plaintiff charges as one of his grounds of alleged negligence that Atlantic violated Title 16, *Del. C.*, § 7701, in that Atlantic failed to furnish the plaintiff a safe, suitable and proper scaffold from which to work. The cited statute reads:

"(a) *A person employing or directing another to perform labor of any kind* in the erection, repairing, altering or painting of a house, building or structure shall not furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders or other mechanical contrivances which are unsafe, unsuitable or improper, and which are not so constructed, placed and operated as to give proper protection to the life and limb of a person so employed or engaged." (Emphasis supplied)

It is to be noted that this statute applies *only* to a person employed by the person who allegedly furnished the "scaffolding" or other specified equipment or the "mechanical contrivances" which are "unsafe, unsuitable or improper" or which are so "constructed, placed and operated" as to fail "to give proper protection to the life and limb of a person so employed *   *  *." The statute may also apply if the person furnishing the scaffolding, specified equipment or mechanical contrivances "directs" the labor of a person using such scaffolding, equipment or mechanical contrivances.

The statute requires that the injured person show that such scaffolding, specified equipment or mechanical contrivances were "unsafe, unsuitable or improper" or that they were "not so constructed, placed and operated as to give proper protection to the life and limb of a person so employed or engaged".

As to an employee or a person who is directed to do labor, the statute is clear; the statute makes the employer or person directing the labor responsible in the case of the death of or injury to the employee or person whose labor is directed,—if the scaffolding, specified equipment, or mechanical devices are shown to be "unsafe, unsuitable or improper" or that they were "not so constructed, placed and operated as to give proper protection * * *."

█ Defendant has argued that the cited statute cannot be utilized as a basis to impose civil liability in favor of an injured employee, because it imposes criminal sanctions for violations of the statute and makes no provision for civil sanctions.

This is not the law. In *Johnson v. Weborg,* 142 Neb. 516, 7 N.W.2d 65, 68 (1942), the Nebraska Supreme Court said:

"* * * 'When a statute commands or prohibits a thing for the benefit of a person, he shall have a remedy upon the same statute for the thing enacted for his benefit, or for a wrong done him contrary to its terms. * * * *The fact that the statute does not in terms impose civil liability is immaterial. It is not necessary to the maintenance of an action that the statute so expressly provide.'* " (Emphasis supplied)

█ Here there has been no showing made that Miller was an employee of Atlantic, or that Atlantic "directed" the manner in which Miller was to perform his work; more-

over Miller has not shown that Atlantic failed in any respect to comply with the statute. On the contrary, the record shows no more than that Miller is an employee of Chesin and that he performed the duties of his work as he saw fit so to do.

As a matter of fact Miller had no complaint as to the manner of construction of the scaffolding,—Miller concedes that the construction of the scaffold was in the usual form and it was adequate. It is to be observed that Miller had been at work on and about the scaffolding from eight in the morning until he fell at about 3:30 P.M. on the day he fell, his fall being occasioned by an unexplained break in the plank on which he was standing at the time.

In light of the facts shown by the record there is no basis for liability on the part of Atlantic.

The case of *Kluttz v. Citron,* 2 N.Y.2d 379, 161 N.Y.S. 2d 26, 141 N.E.2d 547 (1957) presents facts and a situation which tends to show the inapplicability of the cited statute as a basis of liability here on the part of Atlantic; consequently, I rule that Atlantic cannot be held to any liability to Miller by reason of any alleged violations of the cited statute since it is not applicable to Miller.

In the case of *Kluttz v. Citron, supra,* the New York Court of Appeals in considering liability of an employer under a statute resembling the cited Delaware statute, considered the meaning of the words "employing or directing another to perform" and noted what had to be shown under the statute. In that case plaintiff was a painter, with over 40 years experience in the trade. Defendant was the owner of a bungalow type dwelling. He engaged plaintiff, by an oral arrangement, to do the job on a cost of materials and time basis. Plaintiff was told what paint was to be used but all other details in doing the job was left to plain-

tiff's skill and judgment. Defendant had two ladders at his home. He told plaintiff he could use these ladders. While using a home-made ladder, that he had remodeled for his own use, plaintiff was injured when a rung in the ladder broke. Plaintiff sued defendant on the theory of the liability imposed by the scaffolding and instrumentalities statute of New York.

Defendant recovered a verdict at the trial, but when the case reached the Appellate Division that Court reversed the Trial Court's order of dismissal. The New York Court of Appeals reversed the ruling of the Appellate Division and affirmed the verdict and judgment of the Trial Court, saying (161 N.Y.S.2d at 29, 141 N.E.2d at 548):

"As we read this record in light of the most favorable inference rule, plaintiff's proof fails to meet the minimum statutory requirement. The words 'employing or directing another to perform *  *  * painting' mean just that. *  *  * Nowhere does it appear, and it is not claimed, that this defendant at any time gave the plaintiff any instructions or direction as to the manner or method in which he was to perform the painting which he had contracted to do, but it was left solely to his judgment and experience. *  *  *"

Miller next contends that Atlantic is liable to him because of the doctrine of *res ipsa loquitur*, which Miller has pleaded.

Again reference must be made to the facts to determine if there is a basis for applying such pleaded doctrine.

At the outset of my consideration of plaintiff's contentions on this point, I re-emphasize that Miller testified that the scaffold was in usual form; that it was adequate and that he had been working on the construction site and the scaffolding for a considerable period of time, including several hours on the day he fell.

Miller testified at page 26 of the Miller deposition that he and his employer, Chesin, had a perfect right to adjust the scaffold and to re-arrange the planks to suit themselves.

In light of these circumstances I see no legal propriety for this Court applying the doctrine of *res ipsa loquitur* to the case at bar since there was no exclusive control of the scaffolding in defendant.

Judge Stiftel in the recent case of *Vattilana v. George & Lynch, Inc.,* 2 Storey 168, 154 A.2d 565 (Super.Ct.1959) set forth these circumstances which should appear in order to apply the doctrine of *res ipsa loquitur.* He noted as the first point (2 Storey at p. 171, 154 A.2d at page 567) that—

"1. Defendant must have had full management and control of the instrumentality which caused the injury."

The undisputed facts of this case—as presented by Miller, the plaintiff—show that control of this scaffold was at least co-extensive in both Chesin and Atlantic. It is emphasized that plaintiff concedes he could have dealt with the scaffold as he desired on and about the construction site. No showing has been made that Atlantic in any degree reserved any control or management over the scaffolding, much less exclusive and full management and control.

I note too that the highest Appellate Court of New Jersey held in *Holmes v. Pelligrino,* 102 N.J.L. 697, 133 A. 194 (N.J. Ct. E. and App. 1926) that the doctrine of *res ipso loquitur* could not be applied to an unexplained breaking of a plank in a scaffold. Despite its full opinion in *Meny v. Carlson,* 6 N.J. 82, 77 A.2d 245, 2 A.L.R.2d 1160 (Sup.Ct.1950) the present New Jersey Supreme Court did not take occasion to say or hold, 77 A.2d at page 252, that *Holmes v. Pelligrino, supra,* was overruled by Mensy, so

I consider Holmes as effective,—especially in light of that Court's observation that there was "no evidence in the Holmes case of what caused the plank to break".

While *Holmes v. Pelligrino, supra,* is not a Delaware decision and so not binding on me I consider it most persuasive and propose to follow it.

Had this plank broken at an early stage of use by plaintiff I would have, I suppose, been more impressed with many of plaintiff's contentions and arguments. The fact remains now that this scaffold was in use for 6 or 7 months and as much as 7 hours on the day plaintiff fell. At most we have an unexplained breaking of a plank, and I cannot comprehend plaintiff's arguments just how a failure to inspect could have prevented the unexplained breaking.

Prolonged consideration of this case over many months shows clearly that Miller's right of recovery is barred by reason of the prior holding of this Court in *Zeigrist v. Speer,* 6 Boyce 437, 100 A. 470 (Super. Ct. 1917) since plaintiff has not shown any basis of actionable negligence.

Miller adduced no evidence showing the cause of the plank breaking or in what respect it was insufficient. Miller failed to adduce evidence tending to prove any negligence on Atlantic's part.

Since I found no negligence on the part of Atlantic it is unnecessary that I give any consideration to Atlantic's contentions that Miller was contributorily negligent.

For the reasons stated defendants' motion for summary judgment is granted and an order may be presented providing that the conclusions reached be set forth.